OPINION OF THE COURT
Kaye, J.
Statements contained in a plea allocution of a codefendant may, in limited circumstances, be received in evidence as a declaration against penal interest to establish an element of the crime charged against defendant.
After two chain-snatching incidents on 44th Street near Seventh Avenue in Manhattan, defendant and his codefendant (James Rucker) were indicted for robbery and attempted robbery in the second degree. One month later, while incarcerated and awaiting trial, Rucker agreed to plead guilty to *196 attempted robbery in satisfaction of both charges and in consideration of a promise of a deferred sentence and probation. In his plea allocution, Rucker described how both crimes were accomplished, including the fact that he had held the victims while defendant took their chains. His plea was accepted and he was paroled pending sentence.
At defendant’s trial six months later, Barry Stelboum, Carolyn Berk and Steven Levy, three high school students, testified that they had come into Manhattan to attend a matinee, and were walking on 44th Street near Seventh Avenue when a tall man stopped Stelboum, stepped on his foot, and pulled a gold chain from his neck. Both Levy and Berk (who identified defendant as the tall man) testified that during the incident they observed a second, shorter man standing behind Stelboum; after defendant took Stelboum’s chain, he walked past them and the shorter man followed. Berk testified that she stopped to call the police, and then watched defendant and the shorter man approach another individual. Again she saw the shorter man stand behind the victim with arms extended while defendant grabbed the chain from his neck. The second victim, however, shouted at defendant, punched him in the face, reclaimed his chain and ran away. Berk saw defendant and the shorter man walk away, talking together as they went. She pointed defendant out to the police, who arrested him at the scene. Neither Stelboum nor Levy observed the second incident.
After telling the court he would not testify against defendant, Rucker at a hearing outside the presence of the jury refused to answer any questions and asserted his Fifth Amendment privilege. The People then moved to have him declared unavailable and his plea allocution admitted as a declaration against penal interest in order to establish an element of second degree robbery — that defendant was "aided by another person actually present” (Penal Law §§ 110.00, 160.10 [1]). Over defense objection, the trial court declared Rucker unavailable and admitted the portion of the allocution recounting that he held two individuals as "another person” (deleting defendant’s name) took the chains from their necks. Immediately after that testimony was read into the record, and again in its charge, the court instructed the jury that Rucker’s statements were to be considered solely with respect to the issue whether more than one person participated in the crime, and not as evidence of defendant’s identification. A stipulation between counsel was read to the jury to the effect *197 that Rucker’s counsel had, prior to the plea, advised him of the consequences of pleading guilty — both the loss of rights and future risks, and the fact that if he were tried and convicted he would be subject to a substantial mandatory prison sentence. Additionally, defense counsel argued in summation that Rucker’s statements should be discredited because of his favorable plea bargain. Defendant was convicted of robbery in the second degree, and the Appellate Division affirmed, without opinion.
Rucker’s statements constituted hearsay evidence, as they were made out of court and offered for the truth of the matter asserted. Accordingly, the testimony was admissible only if the People demonstrated that it fell within an exception to the hearsay rule (People v Nieves, 67 NY2d 125, 131). The People contend that Rucker’s statements were admissible as a declaration against penal interest.[1]
Hearsay evidence is admissible as a declaration against penal interest only if four prerequisites are met: (1) the declarant must be unavailable to give testimony, whether by reason of absence from the jurisdiction, refusal to testify on constitutional grounds or death; (2) the declarant must have been aware at the time of its making that the statement was contrary to his penal interest; (3) the declarant must have competent knowledge of the underlying facts; and (4) there must be sufficient competent evidence independent of the declaration to assure its trustworthiness and reliability (People v Shortridge, 65 NY2d 309, 312; People v Settles, 46 NY2d 154, 167; see also, Proposed New York Code of Evidence § 804 [b] [4]; Fed Rules Evidence, rule 804 [b] [3]). Defendant does not dispute Rucker’s unavailability or his knowledge of the underlying facts.[2] Thus, we must consider whether the People have demonstrated that in the plea allocution Rucker was aware that his statements were contrary to his penal interest —the second element of the test — and whether there was *198 sufficient independent evidence of the statement’s reliability— the fourth element. These two prerequisites in particular involve a "delicate balance of diverse factors * * * entrusted to the sound judgment of the trial court, which is aptly suited to weigh the circumstances surrounding the declaration and the evidence used to bolster its reliability” (People v Settles, 46 NY2d, at p 169, supra).
The hearsay exception for declarations against penal interest was first accepted in this State in 1970 (see, People v Brown, 26 NY2d 88 [statement exculpating accused]), and ever since has been embraced cautiously. While conceptually we have recognized that declarations against penal interest can be admitted against an accused — admissions of guilt may in fact be "among the most disserving of declarations” (People v Maerling, 46 NY2d 289, 297) — inculpatory declarations of witnesses unavailable for cross-examination are subject to even more exacting scrutiny than others. The interest compromised must be of sufficient magnitude or consequence to the declarant to all but rule out any motive to falsify; within practical limitations, only the portion of the statement opposed to declarant’s interest should be admitted; and defendant should be allowed to prove, if possible, that compliance with the criteria for admissibility was illusory (id.; Richardson, Evidence § 260 [Prince 10th ed, 1972-1985 Supp]; see also, People v Geoghegan, 51 NY2d 45, 49, where we determined that a custodial confession was inadmissible because these assurances of probative value were not present, and additionally because the confession "was not restricted to self-inculpatian, but as well inculpated defendant”).
Not all plea allocutions, or statements contained in plea allocutions, meet these criteria for admission as declarations against penal interest. As a category, therefore, statements in plea allocutions are neither admissible nor inadmissible as declarations against penal interest.
On one level, a declarant by pleading guilty to a felony is plainly acting contrary to his or her penal interest. The potentially serious consequences of a plea of guilty render it unlikely that a declarant would admit guilt if untrue. Having due regard for the process and its significance, we simply cannot accept defendant’s cynical assertion that, in an admission of guilt sworn to in open court, a declarant will say anything necessary for a favorable plea bargain. By pleading guilty to a felony a declarant faces immediate conviction and *199 sentence, establishes a criminal record, and risks enhanced punishment for future crimes. Moreover, the process itself insures that these abstract consequences are necessarily in the declarant’s mind at the very moment the plea is taken, as demonstrated here by Rucker’s plea to attempted robbery in the second degree, a violent felony and apparently his first conviction of a crime. The allocution took place before a Judge in open court. Rucker was under oath, represented by counsel, advised by the court of the forfeiture of his right to trial as well as his right to remain silent, present witnesses and to confront his accusers, and he was told the immediate and future consequences of his plea. The jury was informed that prior to the plea Rucker’s attorney had counseled him that, by becoming a convicted felon he would lose many rights and subject himself to an automatic prison sentence if convicted of a felony in the future, and also that a sentence of probation would subject him to the supervision of the Department of Probation for five years and risk of incarceration for any violation. Viewed from this perspective, "[i]t is hard to conceive of any admission more incriminating to the maker or surrounded by more safeguards of trustworthiness than a plea of guilty” (United States v Winley, 638 F2d 560, 562, cert denied 455 US 959).
But on another level, it is equally plain that a declarant would rarely consent to a plea bargain if it did not in some sense also serve his or her penal interest. And while the presence of the Judge, the oath and the significance of pleading guilty are important differences from custodial confessions, we recognize that a desire to curry favor with the prosecution could also inhere in plea allocutions. Because this dual interest exists, the particular statements in plea allocutions claimed to be admissible as declarations against penal interest must be examined in the context of each case.
Here, the trial court acted within its sound discretion in receiving Rucker’s statements, made in his plea allocution, to establish an element of the crime charged against defendant, because of the nature of those statements, because no facts were adduced to indicate a lack of reliability of those statements in the circumstances, because there was evidence independent of the statements that pointed to their truth, and because the procedures followed mitigated any prejudice to defendant.
By its nature, the testimony that he held the victims was *200 wholly disserving to Rucker and directly contrary to his penal interest. This statement did not in any way seek to minimize Rucker’s own culpability by maximizing defendant’s or by shifting blame to defendant. Moreover, there is no indication from the statements or other evidence — and no evidence was disallowed on this point — that Rucker exaggerated his own participation for the purpose of increasing defendant’s criminal liability or had any motive to do so. It was hardly apparent that by describing his own role in the crimes Rucker would thereby escalate defendant’s liability. True, a prosecutor might influence a codefendant to exaggerate his own conduct for such a purpose, but there is no evidentiary basis for such speculation here. Indeed, Rucker’s refusal to testify against defendant belies any willingness or prearrangement to assist the People in convicting defendant.
In these circumstances, the court properly concluded that the second prerequisite of the four-part test was satisfied: Rucker must have been aware at the time of his plea allocution that statements regarding his own participation in the crime were contrary to his penal interest, and here that interest all but ruled out any theoretical motive to falsely implicate defendant.
We next reach the fourth prerequisite, which we have recognized as the most important inquiry (People v Settles, 46 NY2d, at p 167, supra): whether circumstances independent of the hearsay declaration itself are present which fairly tend to support the assertions made and thereby assure their trustworthiness and reliability. The trustworthiness of Rucker’s statement was corroborated by competent evidence independent of the declaration (People v Settles, 46 NY2d, at pp 168-169, supra). Three eyewitnesses testified regarding the occurrence of the crime and how it proceeded, two of them recounted the presence of a second man, and one of those eyewitnesses observed the same two men (one of them the defendant) in similar roles in both incidents. "Supportive evidence is sufficient if it establishes a reasonable possibility that the statement might be true.” (People v Settles, 46 NY2d, at pp 169-170, supra.) That level was surpassed here.
Finally, in applying the exacting scrutiny necessary when hearsay statements are used against a defendant, we note that the conditions surrounding Rucker’s statements were fully disclosed to the jury, only a portion of the plea allocution was read, the portion itself was redacted and defendant’s name *201 eliminated, and the jury was twice instructed that the testimony was not to be considered as evidence of defendant’s identification. These procedures mitigated any prejudice to defendant.
Having concluded that all prerequisites for receiving this hearsay evidence were satisfied, we proceed to defendant’s constitutional claims. While we recognize that the standards for determining hearsay exceptions and confrontation claims are not identical (see, People v Salko, 47 NY2d 230, 241), in the present case the considerations that rendered Rucker’s statement admissible as a hearsay exception also established that there was no violation of defendant’s constitutional rights (see, Ohio v Roberts, 448 US 56, 66; Chambers v Mississippi, 410 US 284, 298-299; Dutton v Evans, 400 US 74, 89). The stringent standards applied assure the degree of reliability and probative value necessary to substitute for defendant’s loss of the opportunity to cross-examine Rucker. Any presumption of unreliability attached to an accomplice’s confession implicating a defendant (see, Lee v Illinois, 476 US —, 106 S Ct 2056) was overcome by the facts here, including the nature of Rucker’s statement, the circumstances under which it was given, its purpose and necessity, the independent evidence pointing to its truthfulness, and the procedural safeguards implemented to minimize any prejudice to defendant.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Wachtler and Judges Meyer, Simons, Alexander, Titone and Hancock, Jr., concur.
Order affirmed.

. While defendant below challenged the statements as not sufficiently redacted, here the issue is limited to whether admission of the statements violated State evidentiary law and denied defendant his constitutional confrontation and due process rights (NY Const, art I, §6; US Const 6th, 14th Amends).

. Similarly, the materiality of the evidence is not in issue. The eyewitness testimony on the issue whether defendant was "aided by another person actually present” was, as the trial court noted, somewhat vague and uncertain; Rucker’s testimony was necessary, at the least, to "clarif[y]” their testimony regarding the involvement of a second person (117 Misc 2d 1011, 1014).