*495 OPINION OF THE COURT
Bellacosa, J.
The issue in this appeal is the admissibility at trial against defendant of Grand Jury testimony of a recalcitrant, "cooperating” accomplice, Flihan, under the declaration against penal interest exception to the hearsay rule. In People v Thomas (68 NY2d 194), we held that statements made by an accomplice at his own guilty plea allocution qualified as a declaration against his penal interest, and were therefore admissible at the trial of the defendant in that case. Applying the Thomas formula, the trial court at defendant’s trial admitted Flihan’s Grand Jury testimony as a declaration against his penal interest after he refused to testify. The Appellate Division held that admitting the testimony was error, reversed defendant’s conviction and ordered a new trial. The People were granted leave to appeal by a Judge of this court. We agree with the result reached by the Appellate Division.
Application and analysis of the Thomas criteria lead us to conclude that Flihan’s Grand Jury testimony was not sufficiently and imminently against his penal interest to satisfy the core reliability prerequisite for admission at trial under this very restricted hearsay exception. By its nature, his testimony before the Grand Jury, pursuant to a cooperation agreement favorable to himself, held no reasonably certain or imminent threat of prosecution or conviction, despite his waiver of immunity. In this circumstance, Flihan’s statements do not qualify as against his penal interest. They are therefore significantly different from the plea allocution statements that were authorized for use at trial in Thomas. There, the open court statements, by their nature, necessarily triggered adverse penal consequences; namely, the formalization of the conviction itself by the ensuing sentence.
Defendant and his codefendants Cefola, Fata and Flihan were indicted for conspiracy and criminal sale and possession of a controlled substance following an undercover drug "buy- and-bust” operation conducted by the New York State Organized Crime Task Force and centered in Oneida County. *496 Flihan and Fata were arrested on June 26, 1986 at the New Hartford Holiday Inn, the site of the drug sale, after handing one-half kilogram of cocaine to an undercover officer. Defendant and Cefola, who had remained behind in a hotel room in Utica while the sale was completed, were arrested during execution of a search warrant for the room.
On July 2, 1986, Flihan entered into a written cooperation agreement with the Task Force in which he agreed to testify before the Grand Jury, under waiver of immunity, and at any subsequent trial. The agreement provided that if Flihan gave incomplete, misleading, or false information or testimony, the agreement would be null and void. In return, the Deputy Attorney-General agreed to accept Flihan’s guilty plea to a charge of second degree conspiracy in full satisfaction of all "potential charges” for conspiracy and sale and possession of a controlled substance up to the date of the agreement.
Flihan’s testimony before the Grand Jury on July 2, 1986 included admissions that he sold 17 ounces of cocaine to the undercover officer, which he got from Cefola at a hotel room, and that he merely acted as a "broker, courier, a go-between,” to facilitate the sale. Flihan was subsequently indicted for second degree conspiracy and his conviction after a guilty plea was affirmed (People v Flihan, 131 AD2d 269, affd 73 NY2d 729). Defendant was indicted for first degree criminal possession of a controlled substance and second degree conspiracy to sell and possess a controlled substance.
At trial, the People called Flihan to testify in accordance with the terms of the cooperation agreement. He balked and instead invoked his Fifth Amendment privilege. Upon his refusal to testify, the People moved to read portions of his Grand Jury testimony into evidence as a declaration against penal interest. The motion was granted over defendant’s objection. The trial court, acknowledging Thomas, concluded that Flihan’s refusal to testify rendered him legally "unavailable”, and that the Grand Jury testimony was sufficiently against Flihan’s penal interests due to his waiver of immunity and his admissions that he personally sold and possessed cocaine. The court felt this prerequisite was satisfied even though Flihan was allowed to plead to a lesser charge in exchange for his earlier cooperation. Flihan’s Grand Jury testimony was then redacted to exclude all references to the defendant and was read into evidence. The trial court later instructed the jury concerning the exception to the hearsay *497 rule, stating in part that "a person probably would not make a statement admitting that he committed a crime, against his penal interest, unless it were true.” The trial court also instructed the jury to consider Flihan’s motives for making the statements, his awareness of the consequences of the statements, the probability of their truth, and whether there were independent circumstances supporting the trustworthiness of the statements, and to weigh the statements accordingly. The jury convicted defendant Morgan.
As noted earlier, the Appellate Division reversed the conviction and ordered a new trial, holding that the admission of Flihan’s Grand Jury testimony was an abuse of discretion and violated defendant’s constitutional right to confront the witnesses against him. The court found that it was possible that Flihan had a motive to falsely implicate others, including defendant, during his Grand Jury testimony in order to curry favor with the prosecution, and that there was "some doubt what penal interest he testified against” (151 AD2d, at 225) because his testimony attempted to minimize his participation in the drug sale transaction.
Our holding in Thomas (People v Thomas, 68 NY2d 194, supra) reflects the historically restricted availability of the declaration against penal interest exception to the hearsay rule in this State. We have repeatedly recognized that although such declarations may be typically endowed with reliability and trustworthiness because "a person ordinarily does not reveal facts that are contrary to his own interest” unless they are true (People v Maerling, 46 NY2d 289, 295), due process considerations require particularly searching scrutiny of declarations of unavailable witnesses where they are used to inculpate a defendant in a criminal action (People v Brensic, 70 NY2d 9, 15). Thus, we have emphasized as a prerequisite to the admission of such declarations that the declarant’s penal interest "be of sufficient magnitude or consequence” so as to eliminate probable motive to misrepresent the facts (People v Thomas, 68 NY2d, supra, at 198). Motive can be found in a desire to curry favor with the authorities, shift blame, receive immunity from prosecution or obtain a favorable plea bargain (People v Brensic, 70 NY2d, supra, at 15; People v Geoghegan, 51 NY2d 45, 49).
In Thomas (supra, at 197), we applied a four-step guide to assess the admissibility under the exception: "(1) the declarant must be unavailable to give testimony, whether by reason of *498 absence from the jurisdiction, refusal to testify on constitutional grounds or death; (2) the declarant must have been aware at the time of its making that the statement was contrary to his penal interest; (3) the declarant must have competent knowledge of the underlying facts; and (4) there must be sufficient competent evidence independent of the declaration to assure its trustworthiness and reliability”. While we held in Thomas that the plea allocution statements there were admissible, we recognized the competing dual interests in the context of plea bargains — a guilty plea is surely contrary to penal interest in the sense that it leads to "immediate conviction and sentence, establishes a criminal record, and risks enhanced punishment for future crimes,” but it simultaneously serves the declarant’s penal interest by the compromise of a plea to a lesser charge or one with a more lenient sentence (68 NY2d, supra, at 198-199). Here, Flihan may well have thought of his testimony as being only in aid of his penal interest and not adverse at all within the meaning of the Thomas exception criteria.
We also noted in Thomas the safeguards of reliability that inhere in the plea allocution process as contrasted, for example, to a custodial confession: allocutions take place in an open court; the declarant is queried by a Judge and is represented by counsel and advised of the forfeiture of the right to trial, to remain silent, and to present witnesses and confront an accuser; and the declarant is informed of the immediate and future consequences of the plea — conviction and sentence (People v Thomas, supra, at 199). After considering this array of factors, we concluded in Thomas that the declarant’s plea allocution statements, which also did not in any way minimize his own culpability, were "wholly disserving” and "directly contrary to his penal interest” and were therefore admissible (id., at 200).
The circumstances surrounding Flihan’s Grand Jury testimony do not lend the technical and policy assurances of adversity to penal interest and of reliability that were present in Thomas, and therefore fail to satisfy that threshold admissibility test as a matter of law. Key to our holding is that Flihan in the circumstances presented did not face immediate or certain conviction and sentence after testifying. On the contrary, the cooperation agreement that brought about his Grand Jury testimony referred to "potential charges” against him, and his Grand Jury testimony represented only the first step in a continuing, open-ended relationship. The conditional *499 nature of the criminal charges against him, combined with his waiver of immunity, provided maneuvering room and a motive to minimize his role in the drug sale transactions perhaps at the expense, unreliably, of others. Under the circumstances, there was at least the possibility that Flihan was "using” the system, rather than unburdening his conscience, the linchpin of this hearsay exception. His desire and the necessity to implicate others to avoid prosecution may well have predominated, and that is not adverse to one’s penal interest. In fact, Flihan testified that he was merely a courier in the deal. The particular setting of this case beclouds the adverse penal interest and reliability aspects of Flihan’s Grand Jury statements. We do not decide the question whether Grand Jury testimony can qualify for this hearsay exception, but rather that Flihan’s testimony under particularized analysis and application of the Thomas criteria does not.
Finally, the cloud is not lifted by the relevant but insufficiently persuasive factors that Flihan was sworn and warned to tell the truth, and was told by the presiding Judge that his attorney could be present in the Grand Jury room. Nor does the trial court’s comprehensive instruction to the jury concerning the admissibility of declarations against penal interest offset our assessment of the threshold evidentiary determination. Incorporating the Thomas criteria in the jury instructions is no hedge against an erroneous admissibility ruling.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
Order affirmed.