■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HENRY L. LITTLE, Appellant.—Crew III, J. Appeal from a judgment of the County Court of Albany County (Keegan, J.), rendered February 25, 1991, upon a verdict convicting defendant of the crimes of robbery in the first degree, robbery in the second degree, criminal possession of stolen property in the fifth degree, criminal mischief in the fourth degree and criminal possession of a weapon in the fourth degree.

In the early morning hours of March 16, 1990 defendant telephoned Pine Hills Cab Company and requested to be picked up at 328 Clinton Avenue in the City of Albany. The cab, driven by Bradley Kove, arrived at that address at which time defendant entered the rear seat of the cab and Stephen Patterson entered the front passenger side of the cab. Defendant advised Kove of his intended destination and Kove

proceeded to drive off. En route defendant suddenly grabbed Kove around his neck and pulled his head backward choking him. At that point Patterson told Kove to stop the cab, took out a knife and demanded Kove's money. In response, Kove gave Patterson $59 in cash whereupon defendant and Patterson exited the cab and began walking up the street. Kove jumped from the cab and flagged down a police car which, fortuitously, was proceeding down the street at the time the incident was unfolding. Kove told the officers that he had just been robbed and pointed to defendant and Patterson as they were walking away. The police immediately apprehended the two men whereafter they were indicted for robbery in the first degree, robbery in the second degree, criminal possession of stolen property in the fifth degree, criminal mischief in the fourth degree and criminal possession of a weapon in the fourth degree.

Prior to defendant's trial, Patterson entered a plea of guilty to robbery in the first degree in full satisfaction of the indictment against him for an agreed-upon prison sentence of 5½ to 16½ years, conditioned on his testifying for the People against defendant. Patterson was thereafter inexplicably sentenced prior to defendant's trial. At the time of defendant's trial Patterson was subpoenaed to testify and refused to answer any questions with regard to the incident, whereupon he was held in contempt of court and remanded to prison. His testimony, given under oath during the plea colloquy, was introduced into evidence against defendant. Defendant was convicted on all counts of the indictment and this appeal ensued.

Defendant contends, *inter alia,* that the admission of Patterson's plea allocution as direct testimony against him constitutes reversible error. We note, initially, that defense counsel, while arguing that defendant's case was distinguishable from *People v Thomas* (68 NY2d 194, *cert denied* 480 US 948), did not specifically object to the admission of the plea allocution. We will, nevertheless, consider the issue in the interest of justice. The allocution, insofar as pertinent to this appeal, was as follows:

"THE COURT: Do you admit that on the 16th of March, 1990, at approximately 1:18 in the morning at 107 Orange Street, Albany, New York, you, together with another, forcibly stole property from Bradley Kove * * * by placing him in a choke hold, and during the course of the commission of the crime, using a dangerous weapon, that being a knife?

"[PATTERSON]: Not exactly like that, but, yes. [Defendant] did

have knowledge to what was going to—what was about to happen. More or less he was * * * He knew. Basically, it was me, but he knew of the involvement * * *

"[PATTERSON]: No. [Defendant] didn't actually grab him around the neck, your Honor.

"THE COURT: What did he do?

"[PATTERSON]: He basically just grabbed him to get him to stop the cab, you know. Basically, he didn't—didn't choke him or nothing like that. If anything was took in force, it was me who took it from him * * *

"THE COURT: How did he have him?

"[PATTERSON]: He didn't have him—well, the cab driver basically said, 'You don't have to do this.' He just basically [gave] it to me. He said, 'You don't have to do this.' He just gave me the money. He had knowledge of what was going to happen.

"THE COURT: Who had knowledge?

"[PATTERSON]: [Defendant].

"THE COURT: How did he have that knowledge?

"[PATTERSON]: I told him I was going to rob the cab driver * * *

"THE COURT: * * * Now, describe for me what contact [defendant] had with the cab driver from the back seat.

"[PATTERSON]: They had a verbal dispute. [Defendant] was basically trying to get the cab driver to stop the cab. Something about the fare, I guess. In my own interpretation, he didn't want no involvement. I guess that's what he was trying to do, basically, but he knew what we were about to do—what I was about to do * * *

"THE COURT: I am not satisfied that is a plea to robbery in the first degree as set forth in the indictment.

"MS. ROSETTI [Patterson's attorney]: Your Honor * * * I understand the Court's problem in that perhaps it is not as clear as the Court would like it to be, but I think if the Court would permit either myself or Ms. Farnham to ask a few more questions, the Court could satisfy itself."

Thereafter the Assistant District Attorney asked a series of questions which follow:

"MS. FARNHAM: [Defendant] was sitting behind the cab driver, isn't that a fact? Wasn't he?

"[PATTERSON]: Yes.

"MS. FARNHAM: For the purpose of grabbing him from behind, is that correct?

"[PATTERSON]: Yes.

"MS. FARNHAM: The two of you were acting together, is that correct? In order to take the money away from the cab driver —the money that he had on him that night, isn't that correct?

"[PATTERSON]: Yes, ma'am * * *

"MS. FARNHAM: Were you going to share that money with [defendant]?

"[PATTERSON]: A slight possibility I would have. Maybe I wouldn't. I don't know.

"MS. FARNHAM: He helped you, didn't he?

"[PATTERSON]: Yes. I took—well, yes, ma'am.

"MS. FARNHAM: He helped you to rob the cab driver?

"THE COURT: Is that right?

"[PATTERSON]: Yes. I was the mastermind behind it all. He was more or less of an accomplice. Yes."

Defendant contends that while Patterson's plea allocution constituted a declaration against penal interests it should not have been admitted against defendant as an exception to the hearsay rule because County Court's refusal to accept Patterson's plea until he provided additional facts inculpating defendant gave Patterson a probable motive to misrepresent the facts (see, People v Morgan, 76 NY2d 493; People v Thomas, supra). We agree. It is clear from a reading of the plea allocution that Patterson initially denied defendant's involvement in the robbery and it was not until County Court refused to accept his plea that he implicated defendant. For the reasons that follow, however, we find that error to be harmless.

There is overwhelming evidence of defendant's guilt, evidenced by Kove's testimony and the fact that the police arrested defendant and Patterson together approximately 50 feet from the cab immediately after the robbery. Additionally, Patterson's initial version of the incident as reflected in his plea allocution exculpated defendant and was wholly consistent with defendant's version of the facts as testified to at trial. It was not until County Court refused to accept Patterson's plea that he inculpated defendant and then with some reluctance. That fact was forcefully and painstakingly argued to the jury by defense counsel, which may well explain why counsel did not specifically object to the introduction of the plea allocution into evidence. Indeed, as pointed out by defense counsel when Patterson refused to testify, he had intended to call Patterson to the stand if the People failed to do

so. In short, there is no reasonable possibility that the error might have contributed to the conviction *(see, People v Ayala,* 75 NY2d 422; *People v Crimmins,* 36 NY2d 230).

We have considered defendant's other contentions and find them to be without merit.

Mikoll, J. P., Yesawich Jr., Mercure and Casey, JJ., concur. Ordered that the judgment is affirmed.