*169
 
 OPINION OF THE COURT
 

 Bellacosa, J.
 

 Defendant’s appeal requires this Court to address a nuanced variation and application of an admissibility-of-evidence question under
 
 People v Thomas
 
 (68 NY2d 194,
 
 cert denied
 
 480 US 948) and
 
 People v Morgan
 
 (76 NY2d 493). The People presented and the trial court admitted into evidence in appellant Blades’ trial, his co-defendant Marshall’s guilty plea allocution. The allocution was deemed a declaration against Marshall’s penal interest, a hearsay exception. We are persuaded that, while error occurred because “compliance with the [reliability] criteria for admissibility was illusory” in this case
 
 (People v Thomas, supra,
 
 at 198), the order of the Appellate Division should be affirmed on harmless error analysis
 
 (People v Crimmins,
 
 36 NY2d 230, 241-242).
 

 
 *170
 
 I.
 

 Blades and Marshall were charged, in a multiple count indictment, with criminal acts stemming from a single incident. The counts were: (1) burglary in the first degree based on use or threatened immediate use of a dangerous instrument, a metal pipe (Penal Law § 140.30 [3]); (2) burglary in the second degree based on display of what appeared to be a pistol (Penal Law § 140.25 [1] [d]); (3) coercion in the first degree (Penal Law § 135.65 [1]); (4) unlawful imprisonment in the first degree (Penal Law § 135.10); (5) criminal possession of a weapon in the third degree based on possession of a dangerous instrument, a metal pipe (Penal Law § 265.02 [1]); and (6) criminal possession of a weapon in the third degree based on possession of an imitation pistol (Penal Law § 265.02 [1]).
 

 Blades and Marshall forced their way into a Manhattan apartment, bound the occupant’s wrists with duct tape and threatened him with a gun and a pipe. When the perpetrators left the apartment, the victim immediately followed them onto the street, located a police car and reported the crime. The pursuit ended with the arrest of Blades and Marshall on the street near the crime scene. The officers seized duct tape from Blades’ briefcase, and retrieved an air pistol and a black pipe thrown to the street by the departing burglars. At trial, the victim and arresting officers testified to these telling events.
 

 Marshall decided to plead guilty to the reduced charge of attempted burglary in the first degree in satisfaction of the entire indictment. As a condition of the plea bargain, the prosecution required that he recount, as part of his guilty plea allocution, the involvement of the accomplice and his name. Marshall complied by naming Blades as his confederate.
 

 When the prosecution later sought to use Marshall as a witness at Blades’ trial, Marshall invoked his privilege against self-incrimination and refused to testify. As a fallback, the People proffered an excerpt from Marshall’s guilty plea allocution. It was redacted, and the terms “second individual” or “second person” were substituted for Blades’ name. The trial court allowed the People to present this redacted material for the jury’s consideration. In its effort to fit the use within the criteria of
 
 Thomas,
 
 the court indicated that it would also fashion an appropriate limiting jury instruction.
 

 At trial, a formal stipulation between respective counsel for the People and Blades, covering the use of Marshall’s plea, was entered into evidence. It provided, in pertinent part, that Mar
 
 *171
 
 shall was charged in an indictment with James Blades and that, as part of the plea bargain agreement, Marshall agreed to plead guilty prior to the commencement of trial, waive his right to appeal, and implicate the other person acting with him in order to receive the benefits of a lesser plea with a lesser sentence.
 

 Then, immediately prior to the portions of the allocution being read into the record, the trial court cautioned the jury that the plea allocution of Marshall should be used “only for the purpose of determining whether Mr. Blades, the defendant in this case, acted in concert with another person in connection with any of the crimes charged” and not for identification purposes.
 

 The specific portion of Marshall’s allocution, to which Blades initially and consistently objected, was read into the record. In the allocution, Marshall confirmed that he and a second person knowingly entered and remained unlawfully in the apartment of Mr. Headley. Further, Marshall’s allocution addressed the presence of another person with a dangerous instrument:
 

 “the court: And is it true that while effecting entry or while in the dwelling or in the immediate flight from the dwelling, you used, you and that second individual used and threatend [sic] the immediate use of a dangerous instrument, a metal pipe; is that true?
 

 “the defendant: No.
 

 “the court: Did anyone have a metal pipe?
 

 “the defendant: Not that I saw, no. I never saw the second individual with the pipe, not during the committing of the crime or afterward. My first time seeing a pipe was at the police precinct.
 

 “the court: What was your understanding, your attorney said you had some understanding that at the time you and the second person entered the apartment that the second person was, in all probability, armed with an instrument of some sort?
 

 “the defendant: Yes, but as to what that was, I had no idea.
 

 “the court: And is it true you knew that second person had something that would be used to intim
 
 *172
 
 idate the person in the apartment; is that your understanding?
 

 “the defendant: Yeah, it was a possibility.”
 

 The portion of the allocution during which Marshall admitted to possessing and using an air gun that resembled a pistol to threaten the victim was also.read to the jury.
 

 After the jury heard the allocution statements, the court repeated its cautionary limiting instructions. The People then rested. Blades rested without putting in any defense, and the trial continued with the usual jury instructions. All charges, except the unlawful imprisonment count, were presented to the jury. The trial court directed “acting in concert” instructions for all crimes except the count of criminal possession of a dangerous instrument (see,
 
 People v Blades,
 
 164 Misc 2d 749, 751, n 2 [the instant case at nisi prius]). Also, the trial court repeated its limiting instruction with respect to the use of Marshall’s plea allocution against Blades.
 

 The jury convicted Blades on five counts. The trial court later issued a written opinion, helpful for appellate review purposes, confirming and explaining its Bench ruling to admit Marshall’s guilty plea allocution material
 
 (see, id.).
 

 The Appellate Division affirmed the conviction. Relying on
 
 Thomas,
 
 it found that the challenged portions of the allocution were not superfluous to Marshall’s guilty plea. A Judge of this Court granted Blades leave to appeal.
 

 II.
 

 Blades argues that the use of portions of Marshall’s plea allocution was improper, due to a lack of reliability, and that this evidentiary sidestep denied him the right to confront and cross-examine Marshall. Additionally, Blades argues that an erroneous
 
 Sandoval
 
 ruling dissuaded him from testifying, and deprived him of the opportunity to tell the jury that he was not the “second person” redactively characterized in Marshall’s guilty plea allocution story. Since the
 
 Sandoval
 
 argument is without merit, we concentrate the consideration of this appeal solely on the issue of the
 
 Thomas-Morgan
 
 admissibility-reliability threshold test.
 

 In
 
 Thomas,
 
 this Court declared a “limited circumstances” exception for the use of guilty plea allocution statements of a co-defendant against a remaining defendant who chooses to go to trial. The evidence is received “as a declaration against penal interest” of the guilty pleader “to establish an element of
 
 *173
 
 the crime charged against the defendant [on trial]”
 
 (People v Thomas,
 
 68 NY2d, at 195,
 
 supra).
 
 This is a sensitively calibrated, limited allowance under the exception to the hearsay rule concerning statements “against penal interest”. Its operation must be rooted in reliability for the allowance of this kind of evidentiary bypass.
 

 The analysis of admissibility in this circumstance calls for a case-specific examination of the particular guilty plea allocution statements. The statement must establish that a declarant, in making the statement, compromises an interest that is “of sufficient magnitude or consequence to the declarant to all but rule out any motive to falsify”
 
 (id.,
 
 at 198;
 
 see also, People v Brensic,
 
 70 NY2d 9, 15,
 
 remittitur amended
 
 70 NY2d 722).
 

 In
 
 Thomas,
 
 this Court deemed the guilty plea allocution statements admissible. When this Court next weighed the
 
 Thomas
 
 criteria in a different procedural context (Grand Jury testimony of a co-defendant), we rejected admissibility because even the sworn statements before a Grand Jury did not satisfy reliability safeguards
 
 (see, People v Morgan,
 
 76 NY2d 493,
 
 supra).
 
 We fit appellant Blades’ case somewhere between the guideposts of
 
 Thomas
 
 and
 
 Morgan.
 
 Aided by the instruction of both those precedents, we conclude that Marshall’s guilty plea allocution statements regarding the presence of a “second person” with a dangerous instrument were wrongly inserted at Blades’ trial.
 

 In
 
 Thomas,
 
 the co-defendant had allocated to restraining victims while “another person” grabbed their jewelry. Later, at Thomas’ trial, the fact that Thomas was “aided by another person actually present” was a required element of the crime of which Thomas was charged (Penal Law § 160.10 [1]). The co-defendant’s allocution was admitted in Thomas’ trial with limiting instructions, indicating that the information was admitted only to establish whether more than one person was involved in the crime. Additionally, a stipulation as to reliability issues was read to the jury about the circumstances of the co-defendant’s plea bargain — that by pleading guilty he lost rights and incurred future risks but avoided the substantial mandatory prison sentence that he would be subject to if convicted. This Court found that the co-defendant’s allocution — that he held the victims during the crimes — was wholly disserving and directly contrary to his penal interest. That allowed its exceptional admission in Thomas’ trial, and the People were able to use the co-defendant’s guilty plea statements to establish the co-defendant’s presence at the crime scene.
 

 
 *174
 
 While some of the
 
 Thomas
 
 features countermand appellant Blades’ argument here, critical factual and theoretical variations and important differences also emerge. Ultimately, some key differences warrant legal distinctions that lead us to conclude that Marshall’s allocution should not have been allowed at Blades’ trial.
 

 In
 
 Thomas,
 
 as we noted, the co-defendant’s statements were used to show presence at the crime scene. Marshall’s presence, on the other hand, was not necessary or essential to Blades’ first degree burglary count related to the possession of a dangerous instrument. The People’s trial objective was to show that Marshall and Blades acted in concert in order to establish Blades’ criminal culpability. However, Blades
 
 was
 
 the one who allegedly possessed the dangerous instrument, and a “concert of action” theory is gratuitous or superfluous to the burglary count based on possession or threatened use of a dangerous instrument.
 

 The trial court discerned this important distinction with respect to the criminal possession counts in this case. That court decided to instruct on “concert of action” against Blades with regard to the count of criminal possession of what appears to be a pistol. However, by contrast, with respect to the count of criminal possession of a dangerous instrument, the trial court chose to submit the charge against him only on an individual basis. For consistency alone, the trial court should have similarly differentiated between the pertinency of the “concert of action” charge with respect to the analogous burglary counts when it ruled on its “first impression” application of the
 
 Thomas
 
 factors in this distinct setting (164 Misc 2d, at 749,
 
 supra).
 
 The “concert of action” distinction is a key to the door for availability of this
 
 Thomas-hased
 
 hearsay exception.
 

 Only Marshall’s allocution statements regarding possession of the air pistol would be necessary to blame Blades, through a concert of action theory, for the burglary count based on possession of the air pistol because Marshall himself, not the “second person”, had utilized the air pistol. Indeed, Marshall’s allocution statements regarding the air pistol could be used to establish Marshall’s own actions, and this use of the allocution in a criminal collaborator’s trial might more accurately parallel the
 
 Thomas
 
 use. However, Blades does not object to the use of the allocution statements regarding the air pistol.
 

 The practical purpose and result of the use of Marshall’s statements regarding the “second person” are pointedly to
 
 *175
 
 identify Blades as the perpetrator of the burglary with a dangerous instrument. No justifiable relevance is evident to establish that Marshall and Blades acted in concert with respect to the charge of burglary based on possession of a dangerous instrument. Thus, a core feature of
 
 Thomas
 
 is missing.
 

 Since the statements have no legal “concert of action” purpose with respect to Blades, Marshall’s utterances serve to nail Blades as the “other person.” This strategy accomplishes a roundabout but damaging use of Marshall’s statements in this case. The flaw is particularly troubling in the face of the stipulation here, which undermines the general reliability concerns addressed by the pertinent stipulation in
 
 Thomas.
 
 The stipulation in this case highlighted the fact that Blades and Marshall were indicted together and that Marshall was required to implicate the other person acting with him in order to receive his plea bargain
 
 (cf., People v Wheeler,
 
 62 NY2d 867).
 

 We are additionally persuaded in this case by the fact that the requisite indicia of reliability are wanting and elusive because Marshall’s allocution statements fail to negatively impact a legally cognizable penal interest of Marshall. In
 
 Morgan,
 
 this Court provided a method to test this feature. We found “at least the possibility” that the co-defendant “was ‘using’ the system, rather than unburdening his conscience, the linchpin of [the statement against penal interest] hearsay exception”
 
 (People v Morgan, supra,
 
 at 499).
 

 Here, as previously noted, the stipulation that was presented to the jury specifically indicated that Marshall was indicted with Blades, that Marshall pleaded guilty prior to the commencement of trial, and that Marshall was required to implicate the other person acting with him in order to obtain his favorable plea bargain. Demonstratively, these features promote Marshall’s
 
 self interest
 
 in implicating Blades because they were required by the prosecution to seal Marshall’s negotiated package
 
 (see, id.; People v Brensic, supra; compare, People v Vasquez,
 
 179 Misc 2d 854). The manifested likelihood here is that the “deal” and colloquy had become particularly
 
 within
 
 Marshall’s interest, rather than
 
 against
 
 his interest (the linchpin of availability for this hearsay exception).
 

 Most importantly, Marshall’s penal interest was not impaired by being required to specifically implicate Blades in his plea allocution. Identifying Blades by name would not have even been necessary had Marshall pleaded guilty to the charged, substantive crime of burglary first degree, rather than just its at
 
 *176
 
 tempted commission. This being so, despite the later redaction device, a “motive [for Marshall] to falsify” cannot be ruled out of the calculus
 
 (People v Thomas,
 
 68 NY2d, at 198). The
 
 Thomas
 
 criteria are set up to firmly establish the sufficient reliability of this kind of hearsay statement, so as to justify dispensing with the paramount and preferred truth-testing process of cross-examination.
 

 Undoubtedly, Marshall, like many guilty-pleading defendants, was to reap a benefit from the plea. As acknowledged in
 
 Thomas,
 
 that is the usual coin of these bargained transactions and, thus, cannot be the sole factor in evaluating reliability. Critically, though, Marshall’s deal was a sliding scale bargain keyed to the fact and manner of delivering Blades to the prosecution. The incentive to “curry favor” with the authorities and the possibility that testimony was actually in aid of a penal interest tipped this Court’s application, with respect to reliability, to an inadmissibility resolution
 
 (People v Morgan, supra,
 
 at 498-499). Similar concerns exist here.
 

 Our consideration of this case ultimately hinges on precedential rationales describing the functional justification for this exception to the hearsay rule of evidence — reliability.
 
 Thomas,
 
 as illuminated and complemented by
 
 Morgan,
 
 involves a limited application of the important hearsay exception at issue here. The rubrics must not be extended and applied as a blueprint for generalized admission of guilty plea colloquies into evidence, in lieu of live, confronted, cross-examinable trial testimony. Admission of this kind of unchecked evidence must be approached with a wary eye — it is the exception, not the rule. Since the judicial process has uneasily but necessarily tolerated the practice of accepting the testimony of accomplices against their criminal confederates in exchange for leniency, there is good reason for the judiciary to remain steadfast and vigilant in the careful, even strict application of the rules of evidence in these circumstances
 
 (compare, United States v Singleton,
 
 165 F3d 1297 [10th Cir],
 
 en hanc revg split panel
 
 144 F3d 1343).
 

 On the other hand, and as part of the general acquiescence in plea negotiation and prosecution practices that recognize the need for co-defendants to testify against each other, an allocution of one perpetrator that “fingers” another should not presumptively be deemed unreliable. Rather, the context of each particular utterance must be carefully considered, with a fair appreciation of the well-established policy preference for
 
 *177
 
 live witness testimony, instead of less reliable substitutes suffered only through narrow exceptions.
 

 For all these reasons, we conclude that the admission of Marshall’s allocution statements, as utilized here, infringed on Blades’ trial rights (see,
 
 Idaho v Wright,
 
 497 US 805;
 
 People v Thomas, supra). Wright
 
 does not displace
 
 Thomas’
 
 reliability constraint, but is consistent with it. In both cases, the assurance of reliability was required before the statements could be substituted for the lost opportunity to cross-examine the witness. Further, in
 
 Thomas,
 
 the procedural safeguards (the limitation instructions) minimized the prejudice to the defendant. Here, the challenged statements are not demonstrably reliable, and the deprivation of Blades’ ability to confront Marshall at trial, thus, constitutes error.
 

 Common-law adjudication applying the rules of evidence is a sacred guardian of this State’s truth-testing trial process. It is for this reason that sensibly rigorous standards have been erected and continue to be enforced. They may seem fastidious, but because much is at stake, we resolutely refuse to sacrifice tried-and-true testing methods that help to insure that only reliable evidence will be presented to fact finders.
 

 There is overwhelming evidence of guilt, however, in this case, including the almost comical, virtually caught red-handed act of discarding evidence at every step and turn away from the crime scene. Moreover, as noted previously, the trial court in its jury instructions expressly limited the use of the allocution to the issue of whether Blades acted in concert with another. As this was not an element to be established for his conviction of burglary in the first degree, the introduction of the Marshall allocution for that limited purpose cannot be said, in the circumstances and contéxt of this case, to have had a possible prejudicial impact on the jury’s verdict on that crime. We are, therefore, satisfied that the case is an appropriate candidate for the application of the
 
 deus ex machina
 
 — harmless error
 
 (People v Crimmins,
 
 36 NY2d 230, 241-242,
 
 supra).
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley and Rosenblatt concur.
 

 Order affirmed.