OPINION OF THE COURT
Caesar D. Cirigliano, J.
This court presided over the trial of the above-captioned defendants. They and codefendant Calvin Rivers were indicted for robbery in the first degree, two counts of robbery in the second degree and related crimes predicated on the three of them, acting in concert, having robbed Ravon Pierce at knife point on January 7, 2001 in the vicinity of 542 Morris Avenue in the Bronx. Prior to trial, Calvin Rivers pleaded guilty to the top count in full satisfaction of the indictment after having been offered by the conference court a sentence of five years’ incarceration to be followed by five years of postrelease supervision.[1]
In his plea allocution, after a certain amount of prompting by the prosecutor, Calvin Rivers admitted, in summary, that he and defendants Hopkins and Woods had been hanging out together at 542 Morris Avenue on January 7, 2001 when they encountered the complainant; that words were exchanged between them; that defendant Woods then punched the complainant which resulted in a scuffle between Woods, Hopkins and the complainant; whereupon he, Rivers, displayed a knife, and *455 with Hopkins still present, robbed the complainant of, among other items, his car keys.[2]
At trial, the People called Rivers as a witness. After he invoked, outside the presence of the jury, his Fifth Amendment privilege not to testify, the portion of the allocution summarized above with Woods’ and Hopkins’ names redacted to “A” and “B,” respectively, was read to the jury. The trial concluded with defendant Woods being convicted of assault in the third degree and defendant Hopkins of robbery in the second degree and criminal possession of stolen property in the third degree. This opinion is being issued to supplement and further explain the court’s trial rulings with respect to the admission and use of the allocution.
Pursuant to People v Thomas (68 NY2d 194, 197) hearsay evidence is admissible as a declaration against penal interest only if four prerequisites are met:
“(1) the declarant must be unavailable to give testimony, whether by reason of absence from the jurisdiction, refusal to testify on constitutional grounds or death; (2) the declarant must have been aware at the time of its making that the statement was contrary to his penal interest; (3) the declarant must have competent knowledge of the underlying facts; and (4) there must be sufficient competent evidence independent of the declaration to assure its trustworthiness and reliability * * * .” (Citations omitted.)
In Thomas the defendant and his codefendant (Rucker) were indicted for robbery and attempted robbery in the second degree based on two chain snatchings. Prior to trial, Rucker pleaded guilty to attempted robbery in the second degree in full satisfaction of the indictment and in consideration of a promise of probation. In his plea allocution, Rucker described both crimes, including that he had held the victims while defendant Thomas had taken their chains. At trial Rucker refused, outside the presence of the jury, to testify and asserted his Fifth Amendment privilege. The People then introduced Rucker’s plea allocution (with Thomas’ name redacted) in order to establish an element of robbery in the second degree — that defendant Thomas was aided by another person actually present. The trial court instructed the jury that Rucker’s statements were to be considered only on the is *456 sue of whether more than one person participated in the crime and not as evidence of defendant Thomas’ identification.
So too here, the defendants and Rivers were jointly indicted for robbery in the first degree and robbery in the second degree upon the theory that all were present and acting in concert as Rivers robbed the complainant at knife point and Woods punched him. Rivers’ allocution was therefore relevant and material to help establish and corroborate that the complainant had in fact been robbed; that he was robbed at knife point; that he was robbed by a defendant being aided by another person actually present; and that he was punched as part of the robbery. (Cf., Thomas, at 197 n 2, supra.) Once Rivers invoked his Fifth Amendment privilege not to testify, he was unavailable. (Supra at 197.) Since this was a plea allocution where Rivers was represented by counsel, stated on the record, in response to the Judge’s recital of his rights, that he understood the plea to be equivalent to a conviction after trial, and that it would result in an immediate sentence of imprisonment, Rivers was aware that the statements he was then making were against his penal interest. Rivers also had firsthand knowledge of the underlying facts, having been a participant in the robbery, and his statements were corroborated by the complainant’s testimony and his possession of the fruits of the crime. (See, n 2, supra.) Thus, all the prerequisites of Thomas were satisfied and the allocution, with the defendants’ names redacted, was admitted. Moreover, in accordance with Thomas, the jury was instructed that the allocution was being admitted as evidence-in-chief to prove elements of the crimes charged (i.e., that more than one person participated in the robbery, that one of them was armed with a knife and the complainant had been punched) but that it was not to be considered as any evidence that either defendant was one of the perpetrators. In other words, it was not evidence on the issue of identification. The jury was, however, additionally told that the allocution could be considered by them in evaluating the complainant’s credibility.[3]
During the trial the defendants, citing People v Blades (93 NY2d 166), objected to the admission of the allocution on the rationale that the “deal” Rivers was obtaining (5 years instead of the 12 years or more he might have received if convicted) rendered his plea not against his penal interest and therefore unreliable.
*457 In Blades, the defendant and Marshall were indicted for burglary in the first and second degrees predicated on their having entered into a dwelling armed with a pipe and what appeared to be a handgun. Prior to trial, Marshall pleaded guilty to attempted burglary in the first degree in full satisfaction of the indictment. In his plea allocution, Marshall admitted having illegally entered the victims’ dwelling armed with an air pistol. At that point, he had admitted all the essential elements of the crimes for which he had been indicted. However, in accordance with the plea bargain, he then allocuted to the fact that Blades had been his accomplice and had been armed with a pipe. After Marshall refused on Fifth Amendment grounds to testify, Marshall’s allocution, with Blades’ name redacted, was read to the jury. The Court of Appeals held this to be error. That Court ruled that once Marshall had allocuted to personally committing all the essential elements of the crimes with which he had been charged, his allocution with respect to Blades “fail[ed] to negatively impact a legally cognizable penal interest.” (People v Blades, 93 NY2d 166,175, supra.) Since this part of the allocution was obviously provided so that Marshall could obtain the benefit of the plea bargain without, concomitantly, placing himself in jeopardy, it was unreliable and inadmissible. (Supra at 175-177.)
Here, as in Thomas, Rivers was charged with robbery in the second degree predicated on a theory of more than one perpetrator being present. In addition he was charged with robbery in the second degree predicated on a theory of physical injury. Therefore, it was only by implicating Woods and Hopkins that Rivers inculpated himself with respect to these crimes. Blades is therefore inapplicable.[4]
The People, on the other hand, argued that Woods’ and Hopkins’ names should not have been redacted, citing People v James (93 NY2d 620). Suffice it to say that James concerned statements made as part of an ongoing conspiracy — statements that would have been meaningless with the names redacted— and not, as here, a plea allocution with respect to completed crimes. James is therefore inapplicable.
Lastly, this court, predicated on People v Huertas (75 NY2d 487), instructed the jury that it could consider Rivers’ al- *458 locution in evaluating the complainant’s credibility. In Huertas the Court of Appeals held that the description of the perpetrator which the complainant gave to the police could be introduced into evidence so that the jury could evaluate the complainant’s credibility by comparing that description to the physical appearance of the defendant on trial. In other words, the description was offered not for its truth but just for the fact of what she said; and the defendant’s appearance was offered as real evidence. The jury was then able to compare the two in evaluating the witnesses’ credibility. (Supra at 492-493.)
Analogizing therefrom, it is relevant to the jury’s evaluation of the complainant’s ability to observe and remember the people and events in question that a person whom he identified as one of the perpetrators at a lineup subsequently admitted his guilt and pleaded guilty.
The defendants objected to this as bolstering. Bolstering is the improper admission of hearsay evidence to corroborate other evidence in the case. The fact that it is hearsay makes it improper; and that it is used to corroborate other evidence makes it other than harmless. (People v Buie, 86 NY2d 501; see, People v Trowbridge, 305 NY 471.) Here, the complainant’s identification of Rivers as one of the perpetrators at the lineup was not offered for its truth but rather for the fact that it occurred. Rivers’ allocution — in which he admitted his guilt— was then offered as an exception to the hearsay rule. (People v Thomas, 68 NY2d 194, 197, supra.) Thus, neither prong of this proffer violated the hearsay rule; and the inference — that the complainant is a reliable witness because the individual he identified subsequently confessed — is one that could properly be argued to the jury. (Huertas, 75 NY2d 487, supra.)

. The People had recommended 12 years’ incarceration.

. Rivers and Hopkins were found in possession of the complainant’s car when they were arrested.

. As part of complainant’s testimony the jury had heard that he had identified Rivers as one of the robbers at a lineup.

. In addition, the court notes that the five years’ incarceration that Rivers was receiving was far more than the probation promised in Thomas. If the plea allocution in Thomas was not rendered unreliable by a promise of probation, it was presumably not rendered unreliable here by a promise of five years.