**Alen HAYMON, Petitioner,**

v.

**The State of NEW YORK, Respondent.**

No. 02–CV–6427L.

United States District Court, W.D. New York.

Aug. 11, 2004.

Alen E. Haymon, Auburn, NY, pro se.

Loretta S. Courtney, Rochester, NY, for Defendant.

## DECISION AND ORDER

LARIMER, District Judge.

## INTRODUCTION

Petitioner, Alen Haymon ("Haymon"), filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Monroe County Court on one count of second degree (felony) murder and one count of attempted first degree robbery.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On June 3, 1993, Haymon and Omar Sheriff ("Sheriff") attempted to rob a Rochester gas station and in the course of doing so, shot and killed the owner, 65–year–old Attilio Russo ("Russo"). Haymon and Sheriff, both armed with handguns, rode their bicycles to the gas station. Sheriff first confronted Russo and Anthony Thanos ("Thanos"), another employee in the office, but Russo threw a chair at him and Haymon departed. Haymon then re-entered the office and shot Russo in the chest. (Russo received medical treatment for his wounds, but ultimately died from them.) Neither Thanos nor Bob Lee, another eyewitness to the crime, could identify Haymon as one of the robbers.

The robbery ultimately yielded no money. Haymon and Sheriff then fled on their bicycles to the home of Antwana Davis ("Davis"). According to Davis, Haymon admitted that he and Sheriff had tried to rob the gas station. Haymon allegedly told Davis that he had pointed the gun at Russo, who pushed it away. When Haymon directed the gun toward Russo again, it "accidentally" went off, striking Russo in the chest.

Ballistics evidence testing confirmed that Russo was killed by a bullet from a .22–caliber gun. Both Haymon and Sheriff previously had been seen in possession of a .22–caliber revolver about two or three weeks prior to the Russo murder.

In the meantime, Haymon fled to Florida. When he finally was located there, he was arrested and extradited to New York. Haymon gave a detailed written statement to police in which he admitted the robbery by claimed that the shooting was accidental. Haymon claimed that it was Sheriff's idea to rob the gas station. He stated that he was armed with a black .22–caliber revolver, and Sheriff had a .25–caliber

semi-automatic handgun (which allegedly did not work). When they first went to the gas station, they entered the office and Sheriff pointed his gun at the other employee (a "short, stocky" man) and told him to "give it up." Russo, whom he described as "slim", then pushed Haymon out the door. Haymon returned and pointed his gun at Russo while Sheriff urged him to shoot Russo. According to Haymon, Russo grabbed his gun, and as Haymon pulled his hand back the gun discharged, shooting Russo in the chest.

Sheriff told Russo to "get the money," but Haymon left. The two rode away on their bicycles and later met up at Davis's house. Haymon claimed that he brought the .22–caliber gun with him to Florida, where he gave it to a friend who subsequently was "robbed for the gun." *See* T.638–41.[1]

Haymon was indicted on October 7, 1993, on one count of second degree murder, one count of first degree attempted burglary, and two counts of criminal possession of a weapon.[2]

Following a jury trial in Monroe County Court (Smith, J.), Haymon was convicted and received a sentence of 25 years to life on the felony murder charge and a concurrent sentence of 5 to 15 years on the attempted robbery charge.

The Appellate Division, Fourth Department, unanimously affirmed his conviction on November 13, 2000. *People v. Haymon*, 277 A.D.2d 971, 716 N.Y.S.2d 848 (4th Dept.2000). The New York Court of Appeals denied leave to appeal on April 11, 2001. *People v. Haymon*, 96 N.Y.2d 800, 726 N.Y.S.2d 378, 750 N.E.2d 80 (2001).

This habeas petition followed in which Haymon raises two grounds for habeas relief: (1) the admission of statements by his non-testifying accomplice, Sheriff, violated the Confrontation Clause; and (2) the state court's evidentiary ruling on the admission of these statements abridged his due process right to a fair trial.

## DISCUSSION

### I. Exhaustion

A petitioner must exhaust all available state remedies either on direct appeal or through a collateral attack of his conviction before he may seek a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b); *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir.1994), *cert. denied*, 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995). The exhaustion of state remedies requirement means that the petitioner must have presented his constitutional claim to the highest state court from which a decision can be obtained. *See Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir.2000) (citing *Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir.1991)). A claim is properly exhausted when the state court is fairly apprised of the claim's federal nature and of the factual and legal premises underlying the claim. *Grey*, 933 F.2d at 119–20.

A habeas petitioner has a number of ways to fairly present a claim in state court without citing "chapter and verse" of the Constitution, including "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Daye v. Attorney General of New York*, 696 F.2d 186, 194

---

**1.** Citations to "T.___" refer to the transcript of Haymon's trial.

**2.** The People did not pursue the two weapons charges at trial.

(2d Cir.1982) (*en banc*); *accord, e.g., Strogov v. Attorney General,* 191 F.3d 188, 191 (2d Cir.1999).

Respondent asserts that Haymon's due process claim based on an alleged violation of the Fourteenth Amendment is unexhausted. In his "Brief in Opposition" (Docket # 8), Haymon states that his claim "to Federal review of Equal Protection rises to a Constitutional violation due to a State Court's decision in an Evidentiary ruling 'if it was so egregious that it rendered the Petitioner's trial fundamentally unfair in violation of due process.'" *Id.* at 5 (citations omitted). Haymon argues that the evidence against him was not overwhelming, and he points out that he was not identified by the eyewitnesses at trial. *Id.* In support of this statement, he cites to the portion of his state appellate brief in which he argued that the introduction of Sheriff's statements violated the New York state law evidentiary rule against hearsay.

Reviewing that portion of Haymon's state appellate brief, it appears that counsel was attempting to demonstrate a violation of *People v. Brensic,* 70 N.Y.2d 9, 517 N.Y.S.2d 120, 509 N.E.2d 1226 (1987), which articulated the prerequisites for introducing the statements of a non-testifying third party as a declaration against that individual's penal interest, an exception to the hearsay rule in New York. In *Brensic,* the defendants claimed that the admission of such evidence as declarations against penal interest violated New York evidentiary law and denied them their rights of confrontation and due process under the federal and state Constitutions. *Id.* at 13. The court of appeals in *Brensic* agreed that admission of the confessions violated the hearsay rule because neither satisfied the prerequisites for reliability set forth in New York state precedent. However, because the court's determination rested solely on state evidentiary grounds, it did not reach defendants' Confrontation Clause claims. *Id.* Thus, *Brensic* (and the cases interpreting it cited in Haymon's state appellate brief) did not "employ[ ] constitutional analysis in like fact situations," *see Daye, supra,* or satisfy any of the alternative methods articulated in *Daye* for exhausting a claim in state court.

Furthermore, Haymon did not argue on direct appeal that this alleged state law evidentiary error under *Brensic* denied him of the fundamentally fair trial to which he is entitled. The only analysis of trial error dealt with the alleged Confrontation Clause violation which he argued, on direct appeal, was not harmless error under *People v. Crimmins,* 36 N.Y.2d 230, 367 N.Y.S.2d 213, 326 N.E.2d 787 (1975) (employing the test for harmless constitutional error laid down by the Supreme Court of the United States in *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) ("[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.")).

■ Thus, although Haymon asserted on direct appeal that the trial court committed evidentiary error, he framed the argument only as a violation of state law hearsay principles, and he did not claim that the violation denied him of a fundamentally fair trial. In other words, his "harmless error" argument on direct appeal related only to the introduction of Sheriff's statement as a violation of the Confrontation Clause. His present due process claim relates to the admission of Sheriff's statement as a violation of New York's state hearsay rules; this claim was not presented in federal constitutional terms in the state court. Accordingly, it remains unexhausted.

It is clear, however, that Haymon is procedurally barred from returning to state court in order to exhaust this claim. First of all, he has already used the one appeal to the New York Court of Appeals to which he is entitled. *See* N.Y. Court Rule § 500.10(a). Although Haymon could bring a motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10, raising this issue on such a motion would be futile; the state court would deny the due process claim pursuant to C.P.L. § 440.10(2)(c) since Haymon could have raised it on direct appeal, but failed to do so. Thus, Haymon's due process claim is "deemed exhausted." *See Grey v. Hoke*, 933 F.2d at 120–21.

I am precluded from considering this procedurally defaulted claim unless Haymon "can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (citations and internal quotations omitted); *see also Schlup v. Delo*, 513 U.S. 298, 321, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (a fundamental miscarriage of justice requires a showing of "actual innocence"). Haymon does not allege cause or prejudice, nor does he attempt to show that a fundamental miscarriage of justice will occur should I decline to review his claim. Indeed, I find no basis on this record for overlooking the procedural default. Therefore, Haymon's claim that the trial court's evidentiary error violated his due process rights under the Fourteenth Amendment is precluded from habeas review.

In any event, the claim is without merit. A petitioner may premise a claim for habeas relief upon the "introduction of unfairly prejudicial evidence[.]" *Dunni-*

*gan v. Keane*, 137 F.3d 117, 125 (2d Cir.) (citations and quotations omitted), *cert. denied*, 525 U.S. 840, 119 S.Ct. 101, 142 L.Ed.2d 81 (1998). Nevertheless, not all erroneous admissions of such evidence are errors of constitutional dimension. A defendant does not suffer a due process violation as a result of the introduction of improper evidence against him unless the evidence " 'is so extremely unfair that its admission violates fundamental conceptions of justice.' " *Id.* (quoting *Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)) (internal quotation marks omitted in original). As discussed below, I found no error of constitutional magnitude under the Confrontation Clause occasioned by the introduction of Sheriff's statement. Accordingly, Haymon's due process claim is without merit.

## II. Standard of Review

To prevail under 28 U.S.C. § 2254, as amended by the Anti–Terrorism and Effective Death Penalty Act ("AEDPA") in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 375–76, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

## III. Merits of the Petition

### A. Violation of the Confrontation Clause

"In all criminal prosecutions, state as well as federal, the accused has a right, guaranteed by the Sixth and Fourteenth

Amendments to the United States Constitution, 'to be confronted with the witnesses against him.'" *Lilly v. Virginia,* 527 U.S. 116, 123, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (quoting U.S. Const., Amdt. 6 and citing *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) (applying Sixth Amendment to the states)). As the *Lilly* court explained, " '[t]he central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.' " *Id.* at 124, 119 S.Ct. 1887 (quoting *Maryland v. Craig,* 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990)). In *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court held that a defendant is deprived of his Sixth Amendment right to confrontation when his non-testifying co-defendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the co-defendant.

Here, the Appellate Division did not analyze the admission of Sheriff's statement under the rubric of *Bruton* but rather determined that it was admissible as a matter of state evidentiary law:

> County Court properly admitted in evidence the redacted statement of defendant's nontestifying accomplice as a declaration against penal interest. The People established that the accomplice invoked his constitutional privilege against self-incrimination and thus was unavailable as a witness; he was aware when he made the statement that it was contrary to his penal interest; he had competent knowledge of the underlying facts; and there was sufficient competent evidence independent of the declaration to assure its trustworthiness and reliability.

*People v. Haymon,* 277 A.D.2d at 971–72, 716 N.Y.S.2d 848 (citing *People v. Brensic,* 70 N.Y.2d 9, 15, 517 N.Y.S.2d 120, 509 N.E.2d 1226 (1987); *People v. Thomas,* 68 N.Y.2d 194, 197, 507 N.Y.S.2d 973, 500 N.E.2d 293 (1986), *cert. denied* 480 U.S. 948, 107 S.Ct. 1609, 94 L.Ed.2d 794 (1987)).

Until the Supreme Court decided *Crawford v. Washington,* —— U.S. ——, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), in March of this year, "the scope of a defendant's Confrontation Clause rights was delineated by [*Ohio v.*] *Roberts* [, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) ], which 'conditions the admissibility of all hearsay evidence on whether it falls under a firmly rooted hearsay exception or bears particularized guarantees of trustworthiness.' " *United States v. Saget,* 377 F.3d 223, 225–26 (2d Cir.2004) (quoting *Crawford,* —— U.S. at ——, 124 S.Ct. at 1369). Prior to *Crawford,* any out-of-court statement could be admitted without offending the Confrontation Clause as long as it fell within a "firmly rooted" hearsay exception, or the court determined that the statement had "particularized guarantees of trustworthiness" such that adversarial testing would be expected to add little, if anything, to the statement's reliability. *Lilly,* 527 U.S. at 124–25, 119 S.Ct. 1887 (citing *Roberts,* 448 U.S. at 66, 100 S.Ct. 2531).

*Crawford* rejected the general framework set forth in *Roberts* with respect to prior testimonial statements, holding that such statements are never admissible against a defendant unless he had an opportunity cross-examine the declarant, regardless of whether the out-of-court statement falls within a firmly rooted hearsay exception or has particularized guarantees of trustworthiness. *See Crawford,* —— U.S. at ——, ——, 124 S.Ct. at 1370, 1374; *accord Saget,* 377 F.3d 223, 226–27. As the Second Circuit recently explained, "[i]t is

clear that a court faced with an out-of-court testimonial statement need not perform the *Roberts* reliability analysis, as *Crawford* replaces that analysis with a bright-line rule drawn from the historical origins of the Confrontation Clause." *Saget*, 377 F.3d 223, 226–27 (citing *Crawford*, — U.S. at — – —, 124 S.Ct. at 1359–63).

The *Crawford* bar to the admissibility of prior out-of-court statements depends upon whether the statements are "testimonial" in nature. *Crawford*, — U.S. at —, 124 S.Ct. at 1364. The Supreme Court in *Crawford* specifically declined to "spell out a comprehensive definition" of what constitutes a testimonial statement, *id.* at 1374, but it listed "various formulations of this core class of 'testimonial' statements," *id.* at 1364. For instance, prior testimony at a preliminary hearing, previous trial, or·grand jury proceeding, as well as responses made during police interrogations, fall within this "core class." *Id.* at 1364; *see also·id.* at 1374.

Concerning the instant petition, it is clear that under pre-*Crawford* jurisprudence, the trial court's admission, on state evidentiary grounds, of co-defendant Sheriff's statements as declarations against penal interest is not by itself sufficient to overcome any federal constitutional concerns. This is because the Supreme Court specifically rejected the view that declarations against penal interest fall within a firmly rooted hearsay exception for purposes of the *Roberts* framework. *Lee v. Illinois*, 476 U.S. 530, 544 n. 5, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986) ("[D]ue to the sweeping scope of the label, the simple categorization of a statement as a 'declaration against penal interest' . . . defines too large a class for meaningful Confrontation Clause analysis."). It is also apparent that co-defendant Sheriff's statements to police interrogators fall within the core class of "testimonial" statements defined in *Crawford*. *See·* — U.S. at —, 124 S.Ct. at 1364 ("Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard."); *see also id.* at 1365 n. 4 (stating that declarant's "recorded statement, knowingly given in response to structured police questioning," was made in an interrogative setting and therefore was testimonial).

▮ For several reasons, the recent *Crawford* decision does not require that Haymon's conviction be vacated. First of all, *Crawford* was decided by the Supreme Court three years after Haymon's trial and appeals had been completed. I do not believe *Crawford* applies to the facts of this case, but even if it did, I am not convinced that *Crawford* applies retroactively. The Second Circuit did not consider the retroactive application of *Crawford* in its recent pair of cases addressing *Crawford*. *See United States v. Saget*, 377 F.3d 223, *supra; United States v. McClain*, 377 F.3d 219 (2d Cir.2004). ·The Eighth Circuit, though, has expressed doubt as to whether *Crawford* applies retroactively to habeas corpus cases. In *Evans v. Luebbers*, 371 F.3d 438, 444–45 (2004) the Eighth Circuit noted that *Crawford* itself did not suggest that its holding would be applied retroactively. The Eighth Circuit also observed that the case does not appear to fall within either of the two narrow exceptions to the non-retroactivity doctrine established in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).[3]

---

**3.** The First Circuit and the Ninth Circuit explicitly have declined to decide the question of retroactivity. *See Leavitt v. Arave,* 371 F.3d 663, 683 n. 22 (9th Cir.2004); *Horton v. Allen,* 370 F.3d 75, 83 (1st Cir.2004).

But, even if *Crawford* applies to this case, I find that under the circumstances presented the introduction of co-defendants statements was harmless beyond a reasonable doubt. *See McClain*, 377 F.3d 219, 223 ("It is well established that violations of the Confrontation Clause, if preserved for appellate review, are subject to harmless error review ... and *Crawford* does not suggest otherwise.") (citing *Coy v. Iowa*, 487 U.S. 1012, 1021, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988) (holding that denial of face-to-face confrontation is subject to harmless error review); *United States v. Tropeano*, 252 F.3d 653, 659 (2d Cir.2001) ("[H]armless error analysis applies to evidentiary errors and to violations of the Confrontation Clause.")); *see also, e.g., Lilly*, 527 U.S. at 139–40, 119 S.Ct. 1887 (plurality opinion) (Stevens, J.) (admission of a co-defendant's untested confession violated petitioner's Confrontation Clause rights; remanding case to state court "to consider in the first instance whether this Sixth Amendment error was 'harmless beyond a reasonable doubt.'") (citing *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)); 527 U.S. at 143, 119 S.Ct. 1887 (Scalia, J., concurring in part and concurring in the judgment) (stating that admission of accomplice's statement against defendant violated Confrontation Clause, but that case should be remanded for harmless-error review); *id.* at 148, 119 S.Ct. 1887 (Rehnquist, C.J., concurring in the judgment, joined by O'Connor and Kennedy, JJ.); *id.* at 143, 119 S.Ct. 1887 (Thomas, J., concurring in part and concurring in the judgment) (joining plurality in remanding case for harmless-error review).

The Supreme Court has articulated two different standards to be used in determining whether an error may be overlooked by reason of its harmlessness. In *Brecht v. Abrahamson*, the Court held that on collateral review, an error is harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (internal quotation marks omitted). In *Chapman v. California*, which involved the direct review of a state conviction, the Court held that an error is not cause for reversal if it is "harmless beyond a reasonable doubt." 386 U.S. at 24, 87 S.Ct. 824. As the Second Circuit has noted on several occasions, it remains "an open question in this circuit whether, following the passage of AEDPA, the applicable test on habeas review of a state conviction remains the one set forth in *Brecht*, or instead should be a determination 'whether the state court's decision was contrary to, or involved an unreasonable application of *Chapman*.'" *Brown v. Keane*, 355 F.3d at 91 (quoting *Noble v. Kelly*, 246 F.3d 93, 101 n. 5 (2d Cir.), *cert. denied*, 534 U.S. 886, 122 S.Ct. 197, 151 L.Ed.2d 139 (2001) and citing *Parsad v. Greiner*, 337 F.3d 175, 185 n. 5 (2d Cir.), *cert. denied*, —— U.S. ——, 124 S.Ct. 962, 157 L.Ed.2d 798 (2003); *Cotto v. Herbert*, 331 F.3d 217, 253–54 (2d Cir.2003); *Ryan v. Miller*, 303 F.3d 231, 253–54 (2d Cir.2002) (collecting cases); *Fuller v. Gorczyk*, 273 F.3d 212, 220–21 (2d Cir.2001); *Loliscio v. Goord*, 263 F.3d 178, 185 n. 1 (2d Cir.2001); *Santana–Madera v. United States*, 260 F.3d 133, 140 (2d Cir.2001), *cert. denied*, 534 U.S. 1083, 122 S.Ct. 817, 151 L.Ed.2d 701 (2002); *Noble*, 246 F.3d at 101 n. 5). In all of the foregoing cases, the Second Circuit declined to decide the question because it concluded that the result was the same under either test.

"In making a determination of harmless error, the court looks to the record as a whole, considering the overall strength of the prosecution's case, the importance of the improperly admitted evidence, and whether the evidence was em-

phasized at trial." *Brown v. Keane*, 355 F.3d 82, 92 (2d Cir.2004) (citing *Raheem v. Kelly*, 257 F.3d 122, 142 (2d Cir.2001), *cert. denied*, 534 U.S. 1118, 122 S.Ct. 930, 151 L.Ed.2d 892 (2002); *Wray v. Johnson*, 202 F.3d 515, 526 (2d Cir.2000)). Here, the jury had before it Haymon's detailed confession, the accuracy and voluntariness of which the defense raised little to no challenge. Thus, the statements by co-defendant Sheriff were not critical to obtaining a conviction against Haymon. Moreover, as noted above, the prosecutor did not emphasize the co-defendant's statements to the jury in his summation. Even if the admission of co-defendant Sheriff's redacted statements regarding his involvement in the robbery was erroneous, such error was harmless under either standard.

I also believe that the Confrontation Clause claim here should be resolved without reference to either *Robert's* reliability analysis or to *Crawford's* bright-line rule. Sheriff's statements to the police were not introduced at Haymon's trial in their entirety. The statements were redacted to eliminate reference to Haymon and, therefore, this case is governed by *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) which limited the scope of the *Bruton* case. *See Gray v. Maryland*, 523 U.S. 185, 189, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998).

*Richardson* involved a confession by non-testifying co-defendant Williams which had been redacted to exclude all reference to defendant Marsh as well as all reference to the fact that Williams and a "third person" had participated in the crime. The Supreme Court held that this redact-ed confession fell outside *Bruton's* scope and was admissible (with appropriate limiting instructions) at the joint trial. The *Richardson* court distinguished the co-defendant's confession in *Bruton* as a confession that was "incriminating on its face," and which had "expressly implicat[ed]" petitioner Bruton. *Richardson*, 481 U.S. at 208, 107 S.Ct. 1702. By contrast, the Supreme Court found, Williams's confession at Marsh's trial amounted to "evidence requiring linkage" in that it "became" incriminating in respect to Marsh "only when linked with evidence introduced later at trial." 481 U.S. at 211, 107 S.Ct. 1702. Accordingly, the Supreme Court held "that the Confrontation Clause is not violated by the admission of a non-testifying co-defendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Id.* at 211, 107 S.Ct. 1702; *accord, e.g., United States v. Williams*, 936 F.2d 698, 700–01 (2d Cir.1991).[4]

As in *Richardson*, co-defendant Sheriff's statement was substantially redacted and did not mention, let alone directly incriminate Haymon. The police officer who interrogated Sheriff recounted at trial that Sheriff admitted (1) that he was present at the gas station on June 3, 1993, shortly after 6:00 p.m. when a shot was fired; (2) that while he was at the gas station, he had a .25–caliber chrome-plated semi-automatic pistol with a brown grip; and (3) that he was arrested on September 29, 1993, and the police seized possession of the .25–caliber gun at that time.[5] T.615–

---

4. *Crawford* gives no indication that *Richardson* and its progeny have been abrogated in any way. Therefore, I conclude that the exception carved out by *Richardson* for certain redacted accomplice confessions continues to be valid.

5. On direct appeal, Haymon argued that Sheriff's statements "implicated [him] in the Mobil gas station murder, as it put the murder weapon in his hands." The ballistics evidence confirmed that the murder weapon was a .22–caliber handgun. Sheriff's testimony was useful to the prosecution if the jury cred-

17, 671–72. Following this testimony, the trial court issued a lengthy curative instruction to the jury concerning how it was to analyze the trustworthiness and reliability of each of Sheriff's statements. T.617–22, 672–77, *see also* T.785–90.

The foregoing testimony by the interrogating officer contained the entire sum and substance of the statements by Sheriff admitted at Haymon's trial. Furthermore, the prosecutor in his summation did not attempt suggest to the jury the evidentiary linkages he hoped it would draw from Sheriff's statements. In sum, it is apparent that Sheriff's statements, standing alone, do not directly inculpate Haymon in the crime of felony murder. Thus, under the teachings of *Richardson* and *Gray,* Sheriff's statements do not fall within the scope of *Bruton* and present no violation of Haymon's rights under the Confrontation Clause of the Sixth Amendment.

## CONCLUSION

For the reasons stated above, Alen Haymon's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Haymon has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. 28 U.S.C. § 2253.

IT IS SO ORDERED.

ited his assertion that, at the time of the murder, he was in possession of a .25–caliber gun. From that, the jury could conclude that the other perpetrator, Haymon, must have been holding the .22–caliber gun-the murder weapon-and therefore was the shooter.