**James DAILY, Petitioner,**

**v.**

**The People of the State of NEW YORK, Respondent.**

**No. 02 Civ. 2725(PKC)(FM).**

United States District Court, S.D. New York.

July 22, 2005.

James Daily, Coxsackie, NY, pro se.

*ORDER ADOPTING REPORT AND RECOMMENDATION*

CASTEL, District Judge.

In November 1998 after a jury trial in the New York Supreme Court, New York County, petitioner James Daily was convicted of one count of Robbery in the First Degree (N.Y. Penal Law § 160.15(4)), one count of Robbery in the Second Degree (N.Y. Penal Law § 160.10(1)), two counts of Attempted Robbery in the First Degree (N.Y. Penal Law §§ 110.00, 160.15(2) and 160.15(4)), on count of Attempted Robbery in the Second Degree (N.Y. Penal Law §§ 110.00 and 160.10(1)), one count of Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03), and on count of Criminal Possession in the Third Degree (N.Y. Penal Law § 265.02(4)). After pursuing his state law remedies, on April 9, 2002, petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 seeking relief on the ground that: (1) his Sixth Amendment right to confront his accusers was violated by the admissions of testimony about his co-defendant, Curtis Mitchell; (2) the evidence relating to his possession of a weapon was insufficient to support his convictions; and (3) the state court improperly denied his motion to suppress a pre-arrest statement. (Only the last issue was presented to the state court on appeal.) The case was originally assigned to Judge Berman, Who referred Daily's habeas petition to Magistrate Judge Maas. The case was then reassigned to my docket. On May 12, 2005, Judge Maas issued a Report and Recommendation urging the Court to dismiss the petition in its entirety. The Report and Recommendation stated that the parties had ten days from service of the Report to file any objections. As of the date of the Order, no objections have been filed.

Having reviewed Judge Maas's Report and Recommendation, I find it to be well reasoned and thoroughly grounded in law. Judge Maas reviewed petitioner's submissions, the transcripts of petitioner's state court proceedings and case law governing the issues raised in the petition and properly concluded that: (1) petitioner's first two claims for relief were unexhausted, but, in any event, would not entitle petitioner to a writ of habeas corpus; and (2) petitioner was barred from raising his claim that his motion to suppress a post-arrest statement was wrongfully denied because he had been afforded a full and

fair opportunity to litigate that Fourth Amendment claim in the state courts.

Accordingly the Report is adopted in its entirety, and the petition is DENIED. The clerk is directed to enter judgment in favor of the respondent.

Petition has not made a substantial showing of the denial of a constitutional right, and accordingly, a certificate of appealability will not issue. 28 U.S.C. § 2253; see *Lozada v. United States*, 107 F.3d 1011, 1016–17 (2d Cir.1997), *abrogated on other grounds by United States v. Perez*, 129 F.3d 255, 259–60 (2d Cir.1997). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. See *Coppedge v. United States*, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

## REPORT AND RECOMMENDATION TO THE HONORABLE *P. KEVIN CASTEL* [*]

MAAS, United States Magistrate Judge.

I. *Introduction*

In this habeas corpus proceeding pursuant to 28 U.S.C. § 2254, *pro se* petitioner James Daily ("Daily"), challenges his conviction on one count of Robbery in the First Degree, in violation of Section 160.15(4) of the New York Penal Law ("PL"); one count of Robbery in the Second Degree, in violation of PL § 160.10(1); two counts of Attempted Robbery in the

First Degree, in violation of PL §§ 110.00, 160.15(2) and 160.15(4); one count of Attempted Robbery in the Second Degree, in violation of PL §§ 110.00 and 160.10[1]; one count of Criminal Possession of a Weapon in the Second Degree, in violation of PL § 265.03; and one count of Criminal Possession of a Weapon in the Third Degree, in violation of PL § 265.02(4). (*See* Pet. ¶ 4; S. 2).[1] On November 5, 1998, Justice Charles J. Tejada, before whom the case was tried, sentenced Daily to concurrent and consecutive indeterminate prison terms of nine and one-half to nineteen years in the aggregate.

(S.7–9).

In his petition, Daily contends, in substance, that (a) his Sixth Amendment right to confront his accusers was violated by the introduction of testimony regarding his codefendant, Curtis Mitchell;[2] (b) the evidence relating to his possession of a weapon was legally insufficient; and (c) his suppression motion was improperly denied. (Pet.¶ 12).

For the reasons that follow, Daily's petition should be denied.

II. *Background*

A. *Relevant Facts*

1. *Pretrial Hearing*

Prior to trial, Justice James A. Yates conducted a combined *Dunaway/Huntley*[3] hearing to determine the lawfulness of Da-

---

[*] This Report and Recommendation was prepared with the assistance of Laureve Blackstone, a student at Brooklyn Law School.

1. "H" refers to the transcript of the pretrial suppression hearing; "T." refers to the transcript of the trial; "S." refers to the transcript of the sentencing hearing.

2. Although Mitchell and Daily were named in a single indictment which charged them both with the same crimes, (*see* Decl. of Maria

Filipakis, Esq., dated August 28, 2002 ("Filipakis Decl.") Ex. A (Def.'s Br. on Appeal ("Def.'s Br.")) at 2–3), they were not tried together. The record does not indicate whether Mitchell pleaded guilty prior to trial.

3. *See Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *People v. Huntley*, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965).

ily's arrest and the admissibility of his subsequent confession. Three witnesses testified at that hearing: Detectives Thomas Egan ("Egan") and Michael Meehan ("Meehan") for the People, and Daily for the defense.

Insofar as relevant, the detectives' testimony indicated that, following his arrest, Mitchell told Egan that one of his accomplices in two of the UPS robberies was a man named "Poochie," who lived in public housing on Cortland Avenue and 156th Street in the Bronx. (H.22, 43–44, 49). Mitchell also stated that Poochie's true first name was James. (*Id.* at 44). Mitchell was shown a photo array and identified a mug shot of Daily as the person known to him as Poochie. (*Id.* at 49–50). That same day, Egan took two statements from Mitchell, the second of which, at an Assistant District Attorney's direction, was intended to capture "every detail that … Mitchell remembered" about a robbery in the vicinity of Madison Square Garden. (*Id.* at 51–54).

Later that day, Meehan knocked on the door of Apartment 4E at 346 East 156th Street in the Bronx. (*Id.* at 98–99). Daily answered, but claimed that the person the officers were seeking was not home. (*Id.* at 99–100). He nevertheless agreed to let them enter the apartment to look around. (*Id.* at 100). Once inside, Meehan looked at a photograph that he had been provided and stated, "You're James Daily." (*Id.* at 105–06). At that time, Daily acknowledged his true identity. (*Id.* at 106). Meehan then advised Daily that the police "had an investigation going on down in Midtown and that he needed to come with [them]." (*Id.* at 102). Once at the precinct, Daily was put in a holding cell. (*Id.* at 108).

The following day, the police conducted several lineups, but only one of the UPS victims indicated that Daily looked like one of his assailants. (*Id.* at 66–67). Nevertheless, Egan advised Daily that he was being arrested in connection with eight robberies and warned him of his *Miranda* rights. (*Id.* at 68–69). Daily then gave a written statement in which he implicated himself, Mitchell, and a third person in two of the robberies. Daily also voiced concern about who "had given him up." (*Id.* at 319–20).

Daily's recollection of the events leading to his arrest differed markedly from that of the detectives. He testified that he saw police entering his apartment building with battering rams. (*Id.* at 140). When they announced themselves at his door, he feared that they would break it down. (*Id.*). Thereafter, he opened the door and identified himself as "James Daily." (*Id.* at 141). After eight officers entered his apartment, Daily was advised that they would discuss the purpose of their visit "downtown." (*Id.*). Daily then was transported to the precinct, and was handcuffed prior to entering the precinct building. (*Id.* at 142).

At the precinct, Daily remained handcuffed inside an interrogation room. (*Id.* at 112). The police then questioned him over the course of many hours without giving him any *Miranda* warnings. (*Id.* at 114–17). After being told that he would be released if he was not identified through lineups, Daily was further advised that he needed to sign a blank piece of paper to show that he had participated voluntarily in the lineups. (*Id.* at 116–17). Daily signed the blank piece of paper, but never gave the police any incriminatory statement. (*Id.* at 116).

Later, Egan advised Daily that he had been identified in connection with the 29th and 30th Street robberies, Daily was warned of his rights and signed an acknowledgment form. (*Id.* at 117).

At the conclusion of the hearing, Justice Yates found that there was probable cause to arrest Daily at his apartment based on Mitchell's statements. (*Id.* at 173–74). Accepting Daily's version of the police officers' approach to the apartment, the Justice further concluded that the warrantless arrest of Daily was lawful because he was taken into custody at the threshold of his apartment after voluntarily opening the door. (*Id.* at 174). Finally, the Justice found that Daily voluntarily confessed after he was advised of his *Miranda* rights. (*Id.* at 175).

## 2. Trial

### a. *People's Case*

The People's proof at trial would have permitted a reasonable juror to find as follows:

In December 1997, a number of United Parcel Service ("UPS") trucks carrying jewelry were robbed at gunpoint in Manhattan's Garment District. (T. 208–19, 226–41, 289–90). Two of the victims were UPS drivers Robert Thomas ("Thomas") and Irving Ithier ("Ithier"), whose trucks were robbed, respectively, on December 5 and 18, 1997. (*Id.* at 207, 226). The December 5th robbery took place in the vicinity of 224 West 30th Street, and the December 18th robbery took place on 29th Street between Sixth and Seventh Avenues. (*Id.* at 208, 226).

One of the participants in the December 18 robbery was Jonathan Kelly ("Kelly"). Kelly was arrested as he was fleeing the scene and a loaded .357 caliber Magnum revolver was recovered. (*Id.* at 239–40, 257–59, 284–85). Following his arrest, Kelly was interviewed by Egan and made statements which implicated Mitchell. (*Id.* at 290–92).

Several months later, on April 23, 1998, Mitchell was arrested, and subsequently was charged with two of the robberies. (*Id.* at 292, 296). Based upon information that Egan obtained from Mitchell, Daily was arrested the following day. (*Id.* at 297–98). After Daily appeared in several line-ups in connection with six UPS robberies, he admitted to Egan that he had been involved in two of the six robberies. (*Id.* at 308). Egan then wrote, and Daily signed, a statement in which Daily admitted that he had participated in the robberies on 29th and 30th Streets. (*Id.* at 310–16). Daily also admitted that Kelly had carried a weapon during the December 5th robbery, that he had acted as a lookout in connection with the December 18th robbery, and that the *dramatis personae* involved in both of the robberies were the same. (*Id.* at 312–13).

### b. *Defense Case*

Daily was the sole defense witness at trial. He testified that he never made any statement admitting guilt, but had signed a blank sheet of paper because he was told that he would be released once the appropriate paperwork was completed. (*Id.* at 342–43). Thereafter, the police informed him that he was going to be arrested. (*Id.* at 343). Daily testified that he did not tell the police about his involvement in any robberies; instead, the police had advised him of the details of the robberies. (*Id.*). Daily contended that, during the time when the robberies were committed, he was taking care of his disabled mother. (*Id.* at 339).

### c. *Verdict*

The jury returned a verdict of guilty on all counts after less than one day of deliberations. (*Id.* at 489–500).

## 3. *Subsequent Proceedings*

In his brief on appeal to the Appellate Division, First Department, Daily argued

that the trial court should have granted his motion to suppress his inculpatory statements as the fruits of an illegal and warrantless arrest inside his home because Justice Yates' findings were not supported by credible evidence. (*See* Def.'s Br. at 17–29). This was the sole issue presented.

On October 11, 2001, the Appellate Division unanimously affirmed the judgment of conviction. *People v. Daily,* 287 A.D.2d 293, 731 N.Y.S.2d 357 (1st Dep't 2001). In its decision, the Appellate Division concluded that "[t]here [was] no basis upon which to disturb the [trial] court's credibility determinations." *Id.* The Appellate Division further found that Mitchell's statements implicating both himself and Daily in the robberies provided probable cause for Daily's arrest. *Id.* at 358, 731 N.Y.S.2d 357. Finally, the court found that there was no *Payton*[4] violation because the "evidence clearly establishe[d] that defendant consented to the police entry into his apartment, and his claim that he merely submitted … is contradicted by his own hearing testimony." *Id.*

By letter dated November 2, 2001, Daily sought leave to appeal to the New York Court of Appeals. (Filipakis Decl. Ex. D). On December 19, 2001, a judge of that court summarily denied Daily's request. *See People v. Daily,* 97 N.Y.2d 680, 738 N.Y.S.2d 295, 764 N.E.2d 399 (2001). Daily's conviction therefore became final on March 19, 2002. *See Fernandez v. Artuz,* 402 F.3d 111, 112 (2d Cir.2005). He timely filed this habeas corpus petition in this court on April 9, 2002. (Docket No. 1).

### III. *Discussion*

#### A. *Standard of Review*

A habeas corpus petition is not a vehicle to relitigate every issue previously

determined in state court. *Herrera v. Collins,* 506 U.S. 390, 401, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). Instead, a state prisoner seeking habeas relief under Section 2254 must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petitioner bears the burden of proving, by a preponderance of the evidence, that his rights have been violated. *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir.1997).

Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides, in part, that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was *contrary to,* or involved an *unreasonable application of,* clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d) (emphasis added).

As the Second Circuit noted in *Jones v. Stinson,* 229 F.3d 112, 119 (2d Cir.2000), the Supreme Court has

> construed the amended statute so as to give independent meaning to 'contrary [to]' and 'unreasonable.' 'Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the]

---

4. *See Payton v. New York,* 445 U.S. 573, 576, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (holding that the Fourth Amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest").

Court has on a set of materially indistinguishable facts.'

(quoting *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Under the "unreasonable application" clause, a federal habeas court should "ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409, 120 S.Ct. 1495. This standard does not require that reasonable jurists would all agree that the state court was wrong. *Id.* at 409–10, 120 S.Ct. 1495. Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" *Stinson*, 229 F.3d at 119 (quoting *Francis S. v. Stone*, 221 F.3d 100, 109 (2d Cir.2000)).

Section 2254(d)(2) further authorizes the federal courts to grant a habeas writ when a claim considered on the merits in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Finally, to the extent that a habeas petition challenges factual findings, Section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct" and that "[t]he [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

■ "If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail." *Williams*, 529 U.S. at 389, 120 S.Ct. 1495.

### B. *Daily's Claims*

### 1. *Exhaustion*

■ A court may not grant a writ of habeas corpus unless it appears that the petitioner has exhausted all available state court remedies, *or* there is an absence of state corrective process, *or* circumstances render that process ineffective to protect the petitioner's rights. *See* 28 U.S.C. §§ 2254(b)(1)(A), (B). As a defendant charged with a crime in New York State, Daily unquestionably had an effective process available to him through the state statutes governing appeals in criminal cases. *See* N.Y.Crim. Proc. L. § 450.10 (McKinney 1999). Therefore, to satisfy the exhaustion requirement with respect to a particular federal claim, Daily must show that he presented the substance of "the same federal constitutional claim[ ] that he now urges upon the federal courts to the highest court in the . . . state." *Aparicio v. Artuz*, 269 F.3d 78, 89–90 (2d Cir.2001) (internal citations and quotation marks omitted).

■ "A federal constitutional claim has not been fairly presented to the [s]tate courts unless the petitioner has informed those courts of 'all of the essential factual allegations' and 'essentially the same legal doctrine he asserts in his federal petition.'" *Strogov v. Attorney Gen. of N.Y.*, 191 F.3d 188, 191 (2d Cir.1999) (quoting *Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191–92 (2d Cir.1982)). To meet this requirement, it is not necessary that the federal constitutional claim be presented to the state courts in *haec verba*. Indeed, there are a number of ways in which the claim may be presented, including:

(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is

well within the mainstream of constitutional litigation.

*Daye,* 696 F.2d at 194.

■ Here, in his first two grounds for relief, Daily contends that his Sixth Amendment Confrontation Clause rights were violated because the prosecution used information from Mitchell "who never was in court to back up [his] statement[s]" and that the evidence adduced at trial was insufficient to convict him. (*See* Pet. ¶¶ 12.A, B). Neither of these claims was raised in any form as part of Daily's direct appeal. Accordingly, both claims are unexhausted.

■ A federal habeas court presented with an unexhausted constitutional claim may either stay the petition or dismiss it without prejudice so that the petitioner can return to state court to pursue exhaustion. *See Duncan v. Walker,* 533 U.S. 167, 182–83, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (Stevens, J., concurring); *Zarvela v. Artuz,* 254 F.3d 374, 381–82 (2d Cir.2001) (discussing procedures applicable to "mixed" petitions containing both exhausted and unexhausted claims). However, a criminal defendant in New York State has only thirty days to seek reconsideration of the denial of his leave application by the Court of Appeals. *See* N.Y. Rules of Court, Court of Appeals, § 500.10(b). That time period has long since passed. Additionally, pursuant to Section 440.10(2)(c) of the New York Criminal Procedure Law, a defendant who has prosecuted a direct appeal may not subsequently seek collateral review of an issue that could have been raised on appeal but was not. *See Bossett v. Walker,* 41 F.3d 825, 829 (2d Cir.1994). Accordingly, allowing Daily to return to state court would be a futile exercise.

■ In these circumstances, because the New York courts would treat Daily's unexhausted claims as procedurally barred, this Court also must deem them procedurally defaulted. *Aparicio,* 269 F.3d at 90 (citing *Coleman v. Thompson,* 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). Consequently, federal habeas review is precluded unless Daily can demonstrate either "cause for the default and actual prejudice as a result of the alleged violation of federal law" or "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546. *Accord Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 809 (2d Cir.2000); *Glenn v. Bartlett,* 98 F.3d 721, 724 (2d Cir.1996). To make the latter showing, he must establish that he is "actually innocent." *Aparicio,* 269 F.3d at 90. Because Daily has shown neither cause and prejudice nor that he actually is innocent, the Court is precluded from considering his unexhausted claims.

### 2. Merits of Unexhausted Claims

Even if this Court were to address Daily's first two grounds for relief, they would fail on the merits.

#### a. Confrontation Clause Claim

■ Pursuant to the Confrontation Clause of the Sixth Amendment, a defendant has a right to cross-examine the witnesses testifying against him to expose any possible biases or motives for testifying falsely. *Delaware v. Van Arsdall,* 475 U.S. 673, 678–80, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). This right is not absolute, and "trial judges retain wide latitude ... to impose reasonable limits on ... cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only

marginally relevant." *Van Arsdall*, 475 U.S. at 679, 106 S.Ct. 1431; *see also United States v. Holmes*, 44 F.3d 1150, 1157 (2d Cir.1995) (court "retains a wide latitude to exclude irrelevant, repetitive, or cumulative evidence"). Furthermore, even where a Confrontation Clause violation has occurred, relief need not be granted if the error is harmless. *Fuller v. Gorczyk*, 273 F.3d 212, 220 (2d Cir.2001); *Henry v. Speckard*, 22 F.3d 1209, 1215 (2d Cir.1994).

Here, the trial judge permitted Egan to testify that Daily became a suspect as a result of Egan's conversation with Mitchell. (T. 297). Egan did not testify, however, as to any of the details of his conversation with Mitchell, nor was Mitchell a witness at trial. (*Id.*). Accordingly, Daily had no right to confront Mitchell. *See United States v. Lung Fong Chen*, 393 F.3d 139, 150 (2d Cir.2004) (no Confrontation Clause violation where "substantial evidence" was required to link admitted out-of-court statements to co-defendants); *Haymon v. New York*, 332 F.Supp.2d 550, 559 (W.D.N.Y.2004) (no Confrontation Clause violation where co-defendant's statement was introduced at trial with all references to the defendant redacted); *cf. Crawford v. Washington*, 541 U.S. 36, 68–69, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (Confrontation Clause violated where the State admitted a statement made by the victim during police interrogation without allowing the petitioner to cross-examine the victim at trial). Moreover, Egan's testimony concerning his interview of Mitchell was not offered as evidence of Daily's guilt, but, rather, simply to explain why the police went to Daily's apartment. In keeping with this limited purpose, the prosecutor never argued in summation that Egan's interview of Mitchell was evidence of Daily's guilt. (*See* T. 388–423). Therefore, even if the admission of Egan's testimony regarding his inter-

view of Mitchell were deemed to be error, it would be harmless error.

### b. *Sufficiency Claim*

Daily's insufficiency of the evidence claim rests on the assumption that it was improper to convict him on two weapons possession counts relating to the revolver because the weapon belonged to someone else. (Pet.¶ 12.B).

A habeas petitioner challenging the sufficiency of the evidence bears a "very heavy burden." *Knapp v. Leonardo*, 46 F.3d 170, 178 (2d Cir.1995) (internal quotation marks omitted). To prevail, the petitioner must show that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Bossett*, 41 F.3d at 830 (quoting *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Moreover, in considering such a claim, a habeas court must weigh the evidence in the light most favorable to the prosecution and draw all permissible inferences in its favor. *Jackson*, 443 U.S. at 326, 99 S.Ct. 2781. A sufficiency claim therefore does not permit the reviewing court to redetermine the credibility or reliability of witnesses or substitute its view of the evidence for that of the trier of fact. *See Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983); *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir.1996). Rather, insofar as there is evidence from which the jury could have drawn an inference favorable to the accused but chose not to, the court must "defer to . . . the jury's choice of the competing inferences." *United States v. Kinney*, 211 F.3d 13, 18 (2d Cir. 2000) (quoting *United States v. Morrison*, 153 F.3d 34, 49 (2d Cir.1998)).

Under the New York Penal Law, Daily plainly could have been found guilty of weapons possession during the December 18th robbery on an accessorial liability

theory. *See* N.Y. Penal L. § 20.00 (providing that a person is liable for the criminal conduct of another when he "intentionally aids such person to engage in such conduct"). Nevertheless, in his charge, Justice Tejada did not instruct the jury with respect to this theory of liability. Instead, the Justice instructed the jurors that Daily could be convicted on a constructive possession theory, stating to them that "to possess [an object] means to have physical possession *or otherwise exercise dominion or control.*" (T. 473) (emphasis added). The Justice further instructed the jurors that such possession "must be knowing possession; that is, the alleged possessor must be aware of his possession" of the object. (*Id.* at 473–74).

Having heard the testimony of the robbery victims and Egan's testimony concerning Daily's written confession, the jury certainly could have concluded that the UPS robberies followed a pattern, and that, by December 18th, Daily must have known that Kelly would be carrying a firearm, even if this was only Daily's second robbery. *See People v. Casanas,* 170 A.D.2d 257, 566 N.Y.S.2d 7 (1st Dep't 1991). Moreover, under New York law, it was not necessary for the People to prove that Daily also knew that the weapon was loaded; it was sufficient that it was loaded. *Id.*

While Daily's knowing possession of a firearm was scarcely the only inference that the jury could have drawn on the basis of the trial evidence, it was a permissible one. Daily's insufficiency of the evidence claim is therefore meritless.

3. *Denial of Motion to Suppress Daily's Statement*

Daily's last ground for habeas relief alleges that his motion to suppress his post-arrest statement was wrongfully denied. (*See* Pet. ¶ 12.C). Daily raised this claim

on direct appeal, contending that his statement was the tainted fruit of an illegal and warrantless arrest inside his home in violation of the Fourth and Fourteenth Amendments to the United States Constitution. (*See* Def.'s Br. at 17–29).

"[F]ederal habeas corpus relief is not available on the ground that evidence produced at trial was the result of an unconstitutional search and seizure, unless the state denied the prisoner an opportunity for full and fair litigation of the claim." *Grey v. Hoke,* 933 F.2d 117, 121 (2d Cir.1991) (citing *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976)). Thus, a Fourth Amendment claim can be considered on habeas review only when (a) the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (b) there is a corrective mechanism, but the defendant was unable to use it because of an "unconscionable breakdown in the underlying process." *Capellan v. Riley,* 975 F.2d 67, 70 (2d Cir.1992) (citing *Gates v. Henderson,* 568 F.2d 830, 840 (2d Cir. 1977)).

The State of New York clearly has provided defendants such as Daily with the necessary corrective procedures through Section 710 of the New York Criminal Procedure Law. *See Vega v. Artuz,* No. 97 Civ. 3775(LTS)(JCF), 2002 WL 252764, at *12 (S.D.N.Y. Feb. 20, 2002); *Capellan,* 975 F.2d at 70 n. 1 ("federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y.Crim. Proc. Law § 710.10 *et seq.* (McKinney 1984 & Supp. 1988), as being facially adequate") (quoting *Holmes v. Scully,* 706 F.Supp. 195, 201 (E.D.N.Y.1989)). Therefore, in order to secure habeas relief, Daily must demonstrate that there was a breakdown in the state process—which typically consists of some sort of "disruption or obstruction of a state

proceeding." *Capellan*, 975 F.2d at 70 (quoting *Shaw v. Scully*, 654 F.Supp. 859, 864 (S.D.N.Y.1987)).

Daily has made no such showing here. Accordingly, because Daily was given a full and fair opportunity to litigate his Fourth Amendment claims prior to trial, his claim concerning the statement that he gave to Egan cannot be entertained.

### V. *Notice of Procedure for Filing of Objections to this Report and Recommendation*

The parties are hereby directed that if they have any objections to this Report and Recommendation, they must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court, and send courtesy copies to the chambers of the Honorable P. Kevin Castel, United States District Judge, and to the chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, N.Y. 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Castel. Any failure to file timely objections will result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72(b).

May 11, 2005.